[Crim. No. 848.   In Bank.—April 12, 1902.]

In re FREDERICK BEGEROW, on Habeas Corpus.

CRIMINAL LAW—MURDER—HABEAS CORPUS—DELAY OF TRIAL—DISCHARGE OF PRISONER—FUTURE PROSECUTION NOT BARRED.—The discharge of a prisoner accused of murder upon *habeas corpus,* by reason of his not having been brought to trial within sixty days after a mistrial of his case, and of his having been thus denied his constitutional right to a speedy trial, is not a bar to a future prosecution for the same offense.

WRIT of *habeas corpus* to Robert J. Langford, Sheriff of Santa Clara County.

The facts are stated in the opinion of the court.

B. A. Herrington, and George W. Waldorf, for Petitioner.

James H. Campbell, District Attorney, for Respondent.

HENSHAW, J.—This is an application for the discharge of petitioner on *habeas corpus,* growing out of the following facts: In July, 1900, the petitioner, a peace officer of Santa Clara County, shot and killed Joseph Cech and August Berger. He was duly charged with these alleged murders by two separate informations, and was tried five times in all, each trial resulting in a disagreement of the jury and its discharge. In May, 1901, more than sixty days having elapsed since the discharge of the last jury, he applied to the superior court having jurisdiction of the criminal cases pending against him for a dismissal of the prosecution, under subdivision 2 of section 1382 of the Penal Code, which declares that the court, unless good cause to the contrary is shown, must order the prosecution to be dismissed, "if a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the filing of the indictment or filing of the information." The superior court having refused his application, he sued out before this court a writ of *habeas corpus,* and was by its order discharged from custody. (*In re Begerow on Habeas Corpus,* 133 Cal. 349.[1]) Immediately upon his discharge he was rearrested upon a warrant issued by the city justice of the city of San José, who is a committing magistrate under the law, which warrant of arrest was based upon a complaint or deposition in writing charging Begerow with the murder of August Berger. The crime thus charged against petitioner is admittedly the same crime as that for which he had previously been arrested and tried. He has made application to this court to be discharged and to be relieved from all process of arrest under this second deposition or complaint, contending that his discharge upon the former hearing estops the state from the right further to prosecute him for the alleged crime.

By the former decision in this court two principles may be taken as having been declared: 1. That the right of *habeas corpus* is available to a prisoner restrained of his liberty upon a criminal charge in violation of subdivision 2 of section 1382 of the Penal Code, above quoted; and 2. That the right to a trial within sixty days after the finding of the indictment or filing of the information, as provided in that section, makes it the duty of the state to afford the defendant a trial within

[1] 85 Am. St. Rep. 178.

sixty days after mistrial, excepting for good cause shown. It was not, however, in that case decided that the effect of the discharge upon application to the trial court, as primarily contemplated by that section, nor that the effect of the discharge as a last resort upon application by *habeas corpus* to this court, was to create a bar to future prosecution for the same offense. Indeed, upon statutory authority, such a contention is plainly untenable. In chapter 8 of the Penal Code, where it is declared the duty of the judge to dismiss if the defendant has not been brought to trial within sixty days, there is found the further provision, in section 1387, that: "An order for the dismissal of the action, as provided in this chapter, is a bar to any other prosecution for the same offense, if it is a misdemeanor; but it is not a bar if the offense is a felony." While section 1496 of the same code provides: "No person who has been discharged by the order of the court or judge upon *habeas corpus* can be again imprisoned, restrained, or kept in custody for the same cause, except in the following cases: 1. If he has been discharged from custody on a criminal charge, and is afterwards committed for the same offense, by legal order or process; 2. If, after a discharge for defect of proof, or for any defect of the process, warrant, or commitment in a criminal case, the prisoner is again arrested on sufficient proof and committed by legal process for the same offense."

But, against the force of these provisions, it is argued that if given the construction contended for by respondent, which would appear to be the only reasonable one which their language will bear, then, in and of themselves, they are violative of subdivision 13 of article I of the constitution of this state, which guarantees to the party accused the right to a speedy and public trial. But to this the plain answer is, that if we are left to the language of the constitution, without further guidance from the statute, then the question as to what does or does not constitute, within the meaning of the constitutional provision, a speedy public trial must in every instance rest in the discretion of the particular judge to whom the question may be addressed. At common law— even at very ancient common law—a prisoner's right to a speedy trial was secured to him by the commission of jail delivery, whereby the jails were cleared and the prisoners

therein confined either convicted and punished or delivered from custody twice every year. (2 Hawkins's Pleas of the Crown, chap. 6.) It was the abolition of the commission for jail delivery which has made necessary our later statutes defining the limit of the delay allowed the state in bringing alleged malefactors to trial. Such statutes were unnecessary while the custom of jail delivery prevailed, for the justice had not only power to discharge such prisoners as upon their trial might be acquitted, but also all such "against whom upon proclamation made no evidence shall appear to indict them." (2 Hawkins's Pleas of the Crown, chap. 6, sec. 6.) It thus comes that we have upon the statute-books of our states different provisions regulating the rights of defendants and the duty of the state touching their speedy and public trials. By some of these provisions it is expressly declared that upon the failure of the state to bring the prisoner to trial within the reasonable time prescribed by law, the right of the state to proceed further against him for the alleged crime shall cease. In others, owing to their peculiar readings, the courts have conceived such to be the intent of the legislature, and have adjudged accordingly, while by still other statutes provision is made, not for an entire discharge from liability, but merely for a discharge from his imprisonment under the process or proceeding by which he is held. Nor can there be perceived anything unconstitutional in any of these varying provisions. The constitutional right of a defendant charged with crime is to a speedy trial, and this primarily had to do with his personal liberty, as being the one and efficient means by which he should not for an undue time be left to languish in jail, and thus be robbed of such part of his life. One state may therefore in its wisdom say that if its officers do not give the accused his speedy trial it will no longer lift its hand against him, and he goes as free as though he had been acquitted by a jury of his peers. Another state, however, may equally within the same provision of the constitution declare that, if the defendant be denied his speedy trial, the prosecution shall be dismissed, and he shall be set at liberty, but that such dismissal and such enlargement shall not be a bar to further prosecution.

And this in terms is what our state has done. In expressly providing that if the defendant be not brought to trial within

sixty days the prosecution shall be dismissed, it has further prescribed that such dismissal shall not be a bar to further prosecution. In *Ex parte Clarke,* 54 Cal. 412, the sections of the Penal Code above quoted, with others, were under consideration by this court, and it is said: "But the order dismissing the prosecution ends the action commenced by the complaint upon which the magistrate issued his warrant of arrest. It ends the action, however, not by any judgment upon the merits of the case, but by an order in the nature of a judgment of nonsuit, a simple expression of the opinion of the court that that particular proceeding ought not to be further prosecuted. Inasmuch as there is no limitation of time applicable to prosecutions for murder, and as a defendant in whose favor an order of dismissal of the action has been made has never been put in jeopardy within the meaning of the constitution, a new action on behalf of the people may in such case be initated at any subsequent day, either by presentment of a grand jury or by a complaint filed with any magistrate."

There is no higher dignity attaching to the dismissal of Begerow upon his former application in *habeas corpus* than would have pertained to the judgment of the trial court if it had granted his application there in the first instance made. It was a decision merely to the effect that upon the showing made the trial court should have dismissed the prosecution and discharged the prisoner. A judgment of discharge upon *habeas corpus* may or may not be *res adjudicata,* but this will depend wholly upon the questions necessarily determined in the decision upon the writ. The rights of prisoners under the writ of *habeas corpus* were first crystallized in the English Habeas Corpus Act of 31 Car. II. By section 6 of that act, for the prevention of unjust vexation by reiterated commitments for the same offense, it was enacted "that no person or persons which shall be delivered or set at large upon any *habeas corpus,* shall at any time hereafter be again imprisoned or committed for the same offense by any person or persons whatsoever, other than by the legal order and process of such court wherein he or they shall be bound by recognizance to appear, or other court having jurisdiction of the cause." In this there was not only no recognition of the principle here contended for by petitioner, but there was a distinct recogni-

tion of the contrary, in that it is declared merely that he cannot be again imprisoned for the same offense "other than by the legal order and process of such court," etc. And in the *Attorney-General etc.* v. *Quok Ah Sing,* 5· P. C. 179, where a Chinese coolie was discharged the second time upon *habeas corpus,* solely upon the ground that he had been committed a second time for the same offense, contrary to the sixth section of 31 Car. II, the privy council, speaking by Lord Justice Mellish, said they could not agree with the construction which the chief justice put upon this section of the statute: "The principal object of the section seems to have been to prevent persons who had been brought up on a writ of *habeas corpus* and discharged on giving bail and entering into their own recognizance from being again arrested for the same offense and obliged to sue out a second writ. This appears from the provision by which the person discharged may be again arrested by the order of the court, wherein he shall be bound by recognizance to appear. . . . Though I think, however, it [section 6] can only apply when the second arrest is substantially the same cause as the first, so that the return to the second writ of *habeas corpus* raised for the opinion of the court the same question with reference to the validity of the grounds of detention as the first." This is but another way of stating the proposition that the discharge upon *habeas corpus* operates as a bar and estoppel only as to the particular proceeding or process under review, and it is *res adjudicata* only upon the same question presented under the same state of facts. Thus it has been held that a discharge upon *habeas corpus* for failure of proof does not bar further prosecution upon another indictment. In *In re Crandall,* 59 Kan. 671, it is accordingly held that where a court discharges a petitioner because no offense was alleged for which he could be prosecuted, its order not only restores him to liberty, but terminates pending proceedings against him, and he cannot be again arrested or held in custody unless a new prosecution is instituted against him. So in *State* v. *Holm,* 37 Minn. 404, it was held that a discharge upon *habeas corpus* for defect of proof merely terminates the particular proceeding so that the party cannot be further prosecuted except by a new proceeding instituted upon sufficient evidence. And in the case of *In re White,* 45 Fed. Rep. 237, it is said: "To support the plea of

*res adjudicata,* the burden was upon the relator to show that
some issue had been heard and determined in his favor in the
prior [*habeas corpus*] proceeding, of such nature as to consti-
tute an estoppel upon a reinvestigation of the same question.
. . . In the absence of evidence, either upon the face of the
record or from extrinsic sources, showing the prior discharge
from arrest granted the relator was based upon a hearing and
determination of some material issue, like that of identity, it
cannot be held that anything is shown creating an estoppel
against the proceeding now pending for the arrest and
removal for trial of the relator.   As already stated, these
proceedings are based upon new process, beginning with the
complaint made before the judge of the municipal court of
Eau Claire City, and thus the case is brought within the
rulings of the supreme court in *Ex parte Milburn,* 9 Pet. 710,
wherein it is said: 'The discharge of a party under a writ of
*habeas corpus* from the process under which he is imprisoned
discharges him from any further confinement under that
process, but not under any other process which may be issued
against him.' ''

This petitioner's former discharge upon *habeas corpus* was
determinative therefore of but two things,—1. That the
pending prosecution against him must be dismissed; and
2. That because of such dismissal he was entitled to his
present liberty.   It did not decide, and it would have been in
the face of section 1387 of the Penal Code to have decided,
that his discharge under the writ was a bar to future prose-
cution against him.   The criminal procedure under which
he is now held in custody, though for the same crime, is a
different procedure from that which resulted in the informa-
tion and prosecution which had been dismissed, and the pro-
cess by which he is now held in custody is a different process
under this new proceeding.   Cases will be found, as has been
said, where the courts have determined that the discharge
under such or similar circumstances upon *habeas corpus* is a
bar to further prosecution for the same offense.   Amongst
these cases—and many have been examined—may be instanced
*Green* v. *Commonwealth,* 1 Rob. (Va.) 731; *Ex parte Mc-
Gehan,* 22 Ohio St. 442; *Ex parte Jilz,* 64 Mo. 205;[1] *Common-
wealth* v. *McBride,* 2 Brewst. 545.   But in each and all of

[1] 27 Am. Rep. 218.

these it will be disclosed that the courts were deciding in accordance with the mandate of their statutes. With us, as has been said, there is no such mandate, and the express declaration of our law is, that the discharge shall not be a bar to further prosecution.

In *State* v. *Fley*, 2 Brev. 338,[1] Rochelle, who had been discharged from a former commitment for murder because of delay in prosecution, under the Habeas Corpus Act, urged after conviction that because of such discharge he could not be legally tried, and to this the court made the following answer, which meets our hearty approval: "The discharge of Rochelle under the Habeas Corpus Act cannot upon any sound principle be considered as an acquittal from the charge so as to bar a subsequent prosecution for the same offense. The act was made to secure the citizens of the state from vexatious arrests and imprisonment, and not to protect them from prosecutions for crimes actually committed. The act in favor of liberty was sufficient to operate the discharge of the prisoner Rochelle from his former *imprisonment* when the state officer was not ready to produce the proofs of his guilt, but it would be monstrous to say that such a discharge should shield him from a subsequent prosecution, when the proofs of his guilt are ready to be produced."

The writ is therefore discharged and the prisoner remanded.

Garoutte, J., McFarland, J., and Van Dyke, J., concurred.

[1] 4 Am. Dec. 583.