[Crim. No. 1312. Second Appellate District, Division Two.—May 5, 1926.]

## THE PEOPLE, Respondent, v. E. V. GRACE, Appellant.

[1] COURTS — DIVISION INTO DEPARTMENTS — VALIDITY OF ORDERS.—A superior court is but one tribunal, even if it be composed of numerous departments; and an order made in one department during the progress of a cause can neither be ignored nor overlooked in another department in which the cause falls by transfer, and the order made by the judge presiding over the former department is as binding and effective in the latter department as if the judge presiding over said latter department had made it himself.

[2] CRIMINAL LAW — ROBBERY — INSANITY — ORDER FOR PRELIMINARY TRIAL—APPEAL—EVIDENCE—PRESUMPTION.—Where the record on appeal from a judgment of conviction of the crime of robbery presents no showing as to the evidence upon which an order was made granting the defendant a trial as to his sanity, the appellate court must assume that the judge did his duty in making such order and proceeded in accordance with the mandate of section 1368 of the Penal Code and that, therefore, and upon sufficient evidence, a doubt was created in his mind as to the sanity of the defendant.

[3] ID.—TRANSFER OF CASE TO DIFFERENT DEPARTMENT—RIGHT TO PRELIMINARY TRIAL—OVERLOOKING OF PRIOR ORDER.—Where, after the making of said order granting the defendant a trial as to his sanity, the case was transferred to another department of the court, the judge presiding over the latter court was bound to know that it had been made as a matter of law; and where said order was not discharged by a compliance with its terms, the right secured by such order was not waived by the fact that the judge of said latter court, in proceeding to try the defendant for

---

1. See 7 Cal. Jur. 680.
2. See 8 Cal. Jur. 195.

the crime of robbery with which he was charged, overlooked the fact that such order for a preliminary trial had been made, and both the deputy district attorney and the deputy public defender who were at the trial were in the same difficulty.

[4] ID.—PUNISHMENT OF INSANE PERSONS—WAIVER OF PRELIMINARY TRIAL—EVIDENCE—APPEAL.—The law abhors the punishment of insane persons for the commission of acts out of which charges of crime arise, whether the insanity exist at the time such acts are committed, or only at the time the punishment is about to be inflicted, or even if the insanity be discovered while the punishment is in progress; and where a defendant was ordered to trial upon the question of whether he were insane, as a preliminary to his trial on a criminal charge, the most satisfactory evidence will be required to convince the appellate court that he waived his rights under such order.

[5] ID.—SUSPENSION OF TRIAL—WAIVER OF TRIAL WITHIN SIXTY DAYS —RIGHT TO PRELIMINARY TRIAL.—The provision of section 1368 of the Penal Code to the effect that whenever a trial as to sanity is ordered "the trial or the pronouncing of the judgment must be suspended," is mandatory and self-executing; and where, after a plea of not guilty has been entered and the case has been set for trial, a preliminary trial as to the sanity of the defendant is ordered, the latter order has the effect of making the prior order setting the case for trial inoperative until such preliminary trial has been had; and where the preliminary hearing is continued to the date theretofore set for the trial of the case, the act of the defendant on the day of such hearing, in apparent conformity with section 1382 of the Penal Code, in expressly waiving the statutory requirement that the case be brought to trial within sixty days, did not constitute a waiver of his right to a preliminary trial as to his sanity.

[6] ID.—VOID TRIAL.—Where, after defendant's plea of not guilty had been entered and the case had been set for trial, a preliminary trial as to the sanity of defendant was ordered, and such order was not discharged by a compliance with its terms, and it was not otherwise discharged or abrogated, and the right to such preliminary trial was not waived by defendant, the trial of the defendant on the criminal charge made against him was a nullity.

(1) 16 C. J., p. 183, n. 93 New.　(2) 17 C. J., p. 213, n. 30, 31, p. 217, n. 58 New.　(3) 16 C. J., p. 789, n. 40.　(4) 16 C. J., p. 789, n. 40.　(5) 16 C. J., p. 790, n. 42; 32 Cyc., p. 612, n. 94.　(6) 16 C. J., p. 789, n. 40.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles S. Crail, Judge. Reversed.

The facts are stated in the opinion of the court.

John F. Groene for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

WORKS, J.—E. V. Grace, also known as Thomas Lacey, and Robert Newell were jointly charged with the crime of robbery. Newell finally pleaded guilty and Grace pleaded not guilty. The trial of Grace then proceeded and he was adjudged guilty. He appeals from the judgment and from an order of the trial court denying his motion for a new trial.

During the course of the proceedings leading to his conviction appellant was before several judges of the superior court. Both he and Newell were arraigned before Judge Keetch on April 20, 1925. Newell then entered a plea of not guilty and his trial was set for May 22, 1925. The minutes of the court on that occasion show the following as to appellant: "Defendant Earl B. Grace stands mute, and plea of 'Not Guilty' is ordered entered by the Court and trial set for May 22, 1925. Defendant Earl B. Grace is granted trial as to his sanity, which trial is set for April 29, 1925." The title of the cause preceding these minutes, and also the minutes recording Newell's plea and the setting of the day of his trial, is "*The People of the State of California* vs. *Robert Newell and Thomas Lacey*." The next appearance of appellant was before Judges Keetch and Reeve, sitting together, on April 29, 1925. The minutes of the proceedings of that day are below the caption, "*The People of the State of California* vs. *Earl B. Grace*," and show: "Trial is continued to May 22, 1925." At the next appearance, which occurred on the date last mentioned, the judge presiding was Judge Elliott Craig. The minutes entered on that occasion are under a caption showing the names of both Newell and Grace as defendants, and recite: "At request of defendants, trial is continued to June 10, 1925. Defendants waive the sixty day statutory period." Judge Keetch presided on the day of the next appearance, June 10, 1925, and the minutes of that day are under a caption showing the names of both Newell and Grace as

defendants. They contain the following: "Defendant Robert Newell is not present, being confined in the hospital. Trial is continued to July 15, 1925." The next minutes appear under date June 23, 1925, Judge Reeve presiding, and they are preceded by a caption containing the names of both defendants. The minutes recite: "This case is ordered transferred from Department 19 to Department 7 and put on calendar on original setting date, to-wit: July 15, 1925." Judge Crail presided at the next appearance, on the date last mentioned. The caption shows the names of both defendants. The minutes recite that Newell withdrew his plea of not guilty and entered a plea of guilty and they show further: "On order of Court, the following jury is impaneled to try the cause, as to Defendant Earl B. Grace," and the names of the jurors are stated. These minutes and the minutes of the next day show the progress and conclusion of the trial of appellant, not upon the issue as to his sanity, but upon the issue as to whether he committed the crime with which he was charged.

We now turn to the reporter's transcript of the proceedings at the trial. After the disposition of certain preliminary matters, and before any witness was called, the following occurred: "[A Deputy Public Defender, representing appellant]: If your Honor please, there is another matter which we might take up at the present time in regard to the Defendant Grace. At the time of his arrest on this charge he was under the disability of having been declared an insane person and was at that time in Norwalk State Hospital. I am under the impression myself that after his arrest he was discharged; that is to say, a discharge was issued by the authorities of Norwalk State Hospital. . . . I looked through the files to see if that discharge was in the files and I do not find it. When I saw it, it was in the possession of [a] Deputy District Attorney. The Defendant Grace now states that he has never been discharged, and the authorities at Norwalk—I found from his mother that he was still carried on the rolls of that institution. The Court: That would have no bearing on this case, it would seem. [The Deputy Defender]: I think it would in this respect, that if he had been declared to be insane and never has been restored to, or discharged from that disability, he could not be tried, and I am under the impression that he

was discharged. I have proceeded all along upon the theory that he has been discharged, because the Deputy District Attorney showed me a letter of discharge from the Superintendent at Norwalk. The Court: He is personally present. I assume the presumption would be, then, without a commitment, the man was sane. Whatever inference could be drawn from that—[A Deputy District Attorney]: (Interrupting) I might state, your Honor, that I recently examined the law on that question. Your Honor is absolutely correct on that. . . . (A jury was thereupon impaneled to try the case, after having been examined as to their qualifications, and were duly sworn.) (The clerk thereupon read the information and stated the defendant's plea of not guilty.)'' The trial then proceeded to a conclusion, no evidence being taken and nothing further being said upon the question as to the sanity or insanity of appellant.

Between the time when the trial was concluded and the time when appellant's motion for a new trial was presented to the trial court, Mr. Groene, the present counsel for appellant, was substituted in the place of the public defender. The record made at the argument of the motion for a new trial shows the following: "Mr. Groene: I would like at this time to have permission to file a written motion for a new trial. This, of course, will be only general grounds. The Court: Well, file that. Mr. Groene: That is an amendment. I think that in this amendment I mentioned the fact that the defendant is now an inmate of the state institution at Norwalk, for the insane, having escaped from there, and that at the time of the perpetration of this crime, if he was present, that he was incompetent to carry out a crime of that nature, and that he really should be sent back to that institution in order that he might be further treated until he is well of the ailment that is troubling him, which I understand that he is a dope fiend, but he escaped from there and a few days after this crime was committed which he denies that he had anything to do with. . . . Now, . . . it seems to me that . . . he being an inmate now of an institution at Norwalk, he should be sent back there instead of being sent to a prison in this state, and on that ground I think that the trial should not have been held, as far as he is concerned. The Court: Have you got an affidavit to that effect? Mr. Groene: No, just merely a motion, but

I can prepare an affidavit showing those facts. My intention was to go to Norwalk this afternoon and get the affidavit or certificate of the officers there showing that fact. The Court: The District Attorney said in open court that he was discharged from Norwalk. Mr. Groene: He had not been discharged before the perpetration of this crime. If a discharge has been granted, it was subsequent to that. The Court: Have you any evidence at all? You merely have the statement of the defendant to that effect. What does he know about it? By his own admission he has escaped from that institution. Mr. Groene: Yes, he escaped from that institution. The Court: The defendant says he was discharged, that was the escape. Mr. Groene: I expect to make a trip to Norwalk for that very purpose, to get the facts. Of course, what I am stating now is what the defendant states to me and it looks to me that, if under the facts and the circumstances at the time this crime was committed he had not been discharged, it is a good defense for him in this case. The Court: Well, taking up that question now, my idea of the law is that that would not be a defense; that would merely be evidence from which an inference might be drawn that he was insane now but it would not be conclusive, and the defendant was on the stand and testified, and showed to all of us that he was not insane, didn't claim he was insane. The Court does not believe he is insane. There is no occasion to have a similar hearing on the question of his insanity, because there was nothing indicating that he was insane. Mr. Groene: But the fact I claim is, he was insane at the time of the perpetration of this crime. Now, if he was insane at that time, whether he is sane now or not, it looks to me that that is the element that should be considered—what was it at that time? It looks to me— The Court: His own attorney did not have any faith in it. Mr. Groene: Still he escaped from the prison. As I understand it, the District Attorney did not show only the mere statement that he had been discharged; he didn't make it evidence. The Court: There wasn't any burden on the part of the People to prove he was insane; it was presumed that he was sane. Mr. Groene: That is true, too, but I think under all the circumstances he should be given an opportunity and that that should be brought to the attention of the jury, that he was insane at that

particular time when this crime was committed. The Court: That is not a plea, that he was not properly defendant; that wouldn't be a ground for a new trial. Mr. Groene: That is not the ground really but it looks to me, the man having been there, it looks to me that there is something wrong with him mentally. The Court: We have talked about it quite a while. Mr. Groene: I had four ·or five talks with him. To tell you the truth, to my own mind, he is not sane today and I think that he should be given an opportunity and that a new trial should be granted in order that he may have that fact appear and that summary proceedings be had to test his mentality, and whether or not he is insane at this particular time or not. I was up in San Francisco and San Quentin for two or three days this week and I got back late yesterday afternoon and I haven't had a chance to look into the matter or to go to Norwalk. That is all I can say in the matter, your Honor. The Court: You may stand, Mr. Grace. The motion is denied. . . . '' Appellant was then sentenced to imprisonment in the state prison.

Upon this state of the record three points are made by appellant: 1. That Judge Crail was bound by the order of Judge Keetch to the effect that appellant should have a preliminary trial upon the question whether he was insane; 2. That until the preliminary trial upon the issue of sanity was had appellant could not be tried upon the question whether he had committed the act out of which the charge against him arose; 3. That the right to a separate and preliminary trial as to appellant's sanity, under the order made by Judge Keetch, could not be waived by appellant's counsel. Disposition of these points will be made in their sequence as stated.

[1] Upon the first point it seems manifest that appellant's position is correct. In a recent case (*People* v. *Moronati,* 7 Cal. App. 17 [232 Pac. 991]), we decided practically the same question. In that action the defendant entered, in a certain department of the superior court, a plea of not guilty and a certain special plea. He was tried in that department and the jury disagreed. The cause was later transferred to another department of the trial court, where a second trial was had. We determined that the special plea stood at the second trial, notwithstand-

ing the transfer. It is plain to us that the same rule applies here. A superior court is but one tribunal, even if it be composed of numerous departments. A division into departments is made only for convenience in the disposition of the business of the court. An order made in one department during the progress of a cause can neither be ignored nor overlooked in another department in which the cause falls by transfer. The order made by Judge Keetch was as binding and effective in the department presided over by Judge Crail as if the latter judge had made it himself.

Whether Judge Keetch's order remains effective at all is the next question to be considered, and that question is embraced in the second point made by appellant. Was the trial court in error in proceeding with the trial that was had, in the absence of a trial under the order of Judge Keetch? [2] It is provided by section 1368 of the Penal Code: "If at any time during the pendency of an action up to and including the time when defendant is brought up for judgment on conviction a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be submitted to a jury; and the trial or the pronouncing of the judgment must be suspended until the question is determined by their verdict, and the trial jury may be discharged or retained, according to the discretion of the court, during the pendency of the issue of insanity." The language of this section amply upholds the validity of Judge Keetch's order, at the time when it was made. The record presents no showing as to the evidence upon which the order was based. Upon the score of appellant's condition of mind there is nothing in the record of the day upon which the order was made except the order itself. Particularly, there is no reporter's transcript of the proceedings of that day. Under such circumstances it is evident that we must assume that the judge did his duty in making the order. That assumption imports that he proceeded in accordance with the mandate of section 1368 and that, therefore, and upon sufficient evidence, a doubt was created in his mind as to the sanity of appellant. So the order stood as to Judge Keetch, so it also stands as to the judge who conducted the trial that was had, unless something has occurred since the

order was made which operates to set it aside or abrogate it, or which amounts to a waiver of it.

[3] We have already seen that the order was not discharged by a compliance with its terms. No trial was had pursuant to its requirement. And the record furnishes no basis for a claim that it was abrogated or discharged in any other manner except, possibly, by waiver. Was there a waiver of the right secured by the order? This question we proceed now to discuss. Not only did the judge who tried the cause overlook the fact that the order for a preliminary trial had been made by Judge Keetch, but both the deputy district attorney and the deputy public defender who were at the trial were in the same difficulty. It is evident that they both had overlooked Judge Keetch's order. If they had not, they would have reminded Judge Crail of the existence of the order, for it would have been their duty to do so. The right secured under the order was not waived by the failure of the deputy district attorney in this regard, although it was his duty to have made the reminder if he knew of the existence of the order, for he was without authority to waive any right of appellant. Nor do we think there was a waiver because of the silence of the deputy public defender. Upon the score of waiver, and resolving the situation solely from the standpoint of the question of waiver, no more damage could result to the rights of appellant from the failure of the defender to remind Judge Crail of the existence of Judge Keetch's order, than from his failure to remind the former officer of a similar order which had been made by himself. And it seems obvious that a waiver could not have resulted under the circumstance last mentioned. If the order had been made by Judge Crail he would doubtless have remembered it as a matter of fact, but, whether it was made by Judge Keetch or by himself, he was bound to *know* that it had been made, as a matter of law. A due regard for the preservation of the safeguards surrounding those charged with the commission of crime will permit no other conclusion. It is pertinent here to make a few observations which relate not only to the particular point now under discussion, but to others which remain for consideration. [4] The law abhors the punishment of insane persons for the commission of acts out of which

charges of crime arise, whether the insanity exist at the time such acts are committed or only at the time the punishment is about to be inflicted, or even if the insanity be discovered while the punishment is in progress (Pen. Code, secs. 26, 1191, 1201, 1221, 1222, 1367, 1368, 1587). With this just principle so firmly fixed, as, indeed, it must be among an enlightened people, it would require the most satisfactory evidence to convince us that one ordered to trial upon the question whether he were insane, as a preliminary to his trial on a criminal charge, had waived his rights under the order. We are abundantly satisfied that in the present instance there was no waiver because of the failure of the deputy public defender to remind the judge who conducted the trial that such an order had been made in the cause by another judge.

[5] In determining whether the benefits accruing to appellant under Judge Keetch's order were waived, it is necessary to examine another circumstance shown by the record. The minutes of May 22, 1925, with Judge Craig presiding, show this: "At request of defendants, trial is continued to June 10, 1925. Defendants waive the sixty days' statutory period." The waiver contemplated, specifically, by the second sentence of this entry was, of course, a waiver of the right secured by section 1382 of the Penal Code, which provides, in part: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed . . . If a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment, or filing of the information." The question now to be considered is whether, in making this express waiver, and in requesting that "the trial" be continued to June 10, 1925, appellant waived the right secured to him by the order of Judge Keetch granting him a preliminary trial as to his sanity. A determination of this question will be materially aided by an inspection of the minutes of the court from those of date April 20, 1925, containing the order of Judge Keetch, to those entered while Judge Craig was presiding, on May 22, 1925. It will be observed that the minutes of April 20th show that a plea of not guilty was entered for appellant and that his trial was thereupon set for May 22d, but that immediately following this

setting a preliminary trial as to his sanity was ordered and that trial was set for April 29th. The effect of the order making this latter setting was to make inoperative the setting for May 22d until a trial was had on the preliminary question on April 29th or on a later date to which that trial might be continued. So much is evident from the terms of section 1368 of the Penal Code to the effect that whenever a trial as to sanity is ordered "the trial or the pronouncing of the judgment must be suspended." This section does not provide that an order must be made suspending "the trial," but that upon the making of the order for a trial as to sanity "*the trial*" must be suspended. This language of the section is mandatory and it is self-executing. Moreover, it prescribes a positive duty not to proceed with "the trial" until the preliminary trial has been had, a duty, therefore, which is specially enjoined by law in the contemplation of section 1085 of the Code of Civil Procedure, relating to the writ of mandate. Undoubtedly, therefore, "the trial" which was had before Judge Crail could have been halted by the writ of prohibition, no trial having been had under the order of Judge Keetch, unless that order had in the meantime been abrogated in some lawful manner, for the writ of prohibition is the counterpart of the writ of mandate (sec. 1102, Code Civ. Proc.). We advert to this state of the law for the purpose of showing how strongly the rights of appellant were entrenched under the order of Judge Keetch. We have already referred to the sacred character of the right which that order conferred upon him.

We return to the minutes of the court. Appellant was before Judges Keetch and Reeve on April 29th, the date set for the trial of the issue as to his sanity. The minutes of that day show: "Trial is continued to May 22, 1925." This entry related to the trial of the preliminary question as to sanity, for no other trial had been set for April 29th. This truth is so obvious as to require but the mere statement of it. When, therefore, May 22d was reached, the day upon which Judge Craig presided, this was the situation: The date had arrived through continuance, upon which the issue of sanity was to be tried. The date had also arrived, under the original setting, upon which "the trial" was to be had. But at the moment when Judge

Craig took the bench the right of appellant to a trial as
to his sanity was alive and vigorous, while the right of the
prosecution to demand that ''the trial'' should proceed was
in a state of suspended animation. The minutes entered
during Judge Craig's occupancy of the bench must be
viewed in the light of these circumstances, and so viewed
they appear clearly not to show a waiver of the right of
appellant under Judge Keetch's order. The first sentence
of the minutes shows that ''trial is continued'' at the re-
quest of defendants. So far as appellant is concerned,
the request must be deemed to have related only to the
trial which was originally set for April 29th, the trial as
to sanity, for the plain reason that, up to the moment when
Judge Craig made the order that went into the minutes, the
trial set for April 29th was the only trial which the court
had power to conduct. We need not be concerned over the
question whether both ''trials'' were continued by the order
until June 10th. If ''the trial'' originally set for May
22d was so continued it was only postponed to a further
continuance on June 10th, unlesss in the meantime the
trial originally set for April 29th were had, or the order
of Judge Keetch were discharged or abrogated in some
other lawful manner. By the second sentence of Judge
Craig's minutes ''defendants'' waived the requirement of
section 1382 of the Penal Code. We see nothing incon-
sistent with the right of appellant under Judge Keetch's
order in the making of this express waiver. There was no
reason, even if the right to a trial as to sanity were pend-
ing, why the waiver as to the time of the main trial should
not have been made, and it was doubtless proper for Judge
Craig to insist upon the waiver that was expressly made
as a condition annexed to the order for continuance, what-
ever was the effect of that order. It is clear to us that the
minutes entered under Judge Craig show no waiver of
appellant's right under the order for a trial as to sanity.
We need not dwell upon the later minutes of the court
except to say that by them, through regular continuance,
the date of the trial originally set for April 29th, the trial
as to sanity, was carried forward to the day when appel-
lant appeared before Judge Crail and was tried and con-
victed pursuant to the original setting of ''the trial,'' to

employ again the term used in section 1368 of the Penal Code, for May 22d.

[6] When Judge Crail took the bench on July ·15th, 1925, the right of the prosecution to demand "the trial" was still in a state of suspension. Did anything· occur before him to revive that right? Did anything occur before him that amounted to a waiver of appellant's right to a trial as to his sanity? For the purpose of answering these questions we have above set forth the colloquy between the judge and the deputy public defender which took place at the commencement of the trial that Judge Crail conducted. Little more than a perusal of the remarks of the two is necessary to an answer to the questions just stated. The deputy public defender did not insist upon a trial as to sanity under the order of Judge Keetch, but he did insist that "the trial" could not proceed, for the reason that appellant had been confined in an institution for the insane and that he had not been discharged from that custody up to the time of the commission of his alleged crime, although he stated that he was under the impression that such a discharge had been granted after appellant was arrested. It is true that the colloquy between the trial judge and the defender was colored by the·incorrect belief, indulged in by both, that a discharge of appellant after his arrest could affect the question whether he was insane at the time when it is alleged that he committed the crime with which he was charged. Nevertheless we think it sufficiently appears that the defender insisted that appellant could not be tried because he was insane and that the judge held that the trial must proceed because appellant's sanity was to be presumed. On the whole, we are satisfied that the defender said nothing that worked a waiver of appellant's right under the order of Judge Keetch.

We have quoted the record made at the argument of the motion for a new trial, not as bearing on the question of waiver, but as showing that appellant insisted through his counsel in the trial court, to the last moment, that he was insane. That record is set forth for the purpose, also, of correcting certain erroneous statements made by the trial judge at the time, and which tend somewhat to obscure the circumstances surrounding the trial. The judge said:

"The District Attorney said in open court that he [appellant] was discharged from Norwalk." This statement was made by the deputy public defender, and in the form already noticed. The judge also said that "the defendant was on the stand and testified, and showed to all of us that he was not insane, didn't claim he was insane. The Court does not believe he is insane." Appellant did not take the witness-stand. Before Newell withdrew his plea of not guilty he insisted upon a continuance of the case on behalf of both appellant and himself. In the midst of Newell's remarks on this subject appellant interjected the statement: "I haven't had a chance." So far as the record discloses this was his only utterance during the trial. The judge further said: "His own attorney did not have any faith in [the claim that appellant was insane]." The attitude of the deputy public defender on this subject is shown by what occurred at the commencement of the trial. It is to be observed here that the "written motion for a new trial," referred to in the remarks of Mr. Groene on the argument of motion for a new trial, is not to be found in the record.

Appellant's third point, as above stated, is that his counsel were without authority to waive his rights under the order of Judge Keetch. Because of the conclusions above reached we find it unnecessary to decide that question.

Appellant presents other points which arise, as he contends, under the record of the trial that ended in his conviction, but we need not pause to consider them.

The order of Judge Keetch has never been discharged or abrogated. The trial before Judge Crail was therefore a nullity. The cause must be remanded for a trial upon the question of appellant's sanity or insanity as contemplated by the order of Judge Keetch. After that trial appellant will further be dealt with as required by law.

Judgment and order reversed and cause remanded for further proceedings in accordance with this opinion.

Finlayson, P. J., and Craig, J., concurred.