[Crim. No. 1527. Second Appellate District, Division One.—January 4, 1928.]

## THE PEOPLE, Respondent, v. EARL V. GRACE, Appellant.

John F. Groene for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

HAHN, J., *pro tem.*—The defendant Earl V. Grace was charged by an indictment filed by the grand jury of Los Angeles County with the crime of robbery. From a judgment of conviction and the denial of his motion for a new trial he makes this appeal.

Events happening in connection with the robbery and the arrest of the defendant material to this appeal may be briefly stated as follows: About 9 o'clock on the evening of February 28, 1925, the complaining witness, A. J. Maes, who was engaged in the grocery business in the city of Los

Angeles, was going to his home, which was located a short distance from his place of business. Just as he left his grocery store he was met by two men, one of whom accosted him and made some remark about paying him a bill. Maes recognized this man as a neighbor by the name of Newell, but was evidently suspicious of the men, for without stopping to reply, he continued on to his home. Just as Maes reached the front porch of his house, which was about forty feet from the front sidewalk, his attention was attracted by the two men following him. As he stepped on his porch, one of these men, whom Maes states was the neighbor Newell, demanded his money, while the other man, a stranger to Maes but subsequently identified by Maes as the defendant Grace, pointed a revolver at him. Thereupon Newell relieved Maes of about $125 in currency, a number of checks, some keys, two membership cards in the Chamber of Commerce and other personal effects. The holdup occupied but a few minutes, during which time an electric light was burning on the porch above where the men were standing. Within an hour after the robbery Newell was arrested by two policemen, Walter S. Schubert and J. F. Koehn. There was found on his person the money, checks, and other articles taken from the complaining witness. Newell confessed the robbery and, as it appears from the rebuttal testimony, informed the officers that Grace was his partner in the robbery, and that he could be found at 330 North Lorena Street. Thereupon, accompanied by Newell, officers Koehn and Schubert went to the house at 300 North Lorena Street, arriving there about 11:30 P. M. These officers testified that just as they drew up in front of the house in question, the electric lights in the house suddenly went out. Koehn went to the front door and knocked. After a moment's waiting the door was not opened and Koehn then forced the door open. At the same time that Koehn went to the front door, Schubert went to the rear door, through which he gained admission to the house without difficulty. In the house, which was a five-room bungalow, were three sleeping rooms. In one of these rooms a man and woman were found in bed. In another several men were found and in the third three men were found lying on the bed and underneath the bed Grace was found hiding.

The officers in searching through the bed found a .38 caliber revolver under the pillow, and in one of Newell's pockets four cartridges were found which fitted the revolver. The revolver was identified by the prosecuting witness as similar in appearance to the one that was used when he was robbed. After some discussion between the officers, Grace and the other occupants of the house, the officers took Grace and Newell to the police station, and they were subsequently charged by information with the robbery. Newell plead guilty to the charge, while the defendant Grace stood trial.

Before discussing the legal questions involved on the appeal it becomes necessary to give a brief *résumé* of certain dates and events in connection with the first trial, appeal and reversal of the judgment of conviction.

The original information charging both Newell and Grace with the crime was filed on April 3, 1925, and on April 20, 1925, the defendant Grace was arraigned and plead not guilty. At the time of his arraignment the trial judge ordered that the defendant Grace be first put on trial for his sanity. For some reason, which does not appear in the record, this order of the court was ignored, and the defendant was put on trial for the offense on July 15, 1925. He was found guilty as charged, and an appeal was taken from the judgment of conviction. On May 5, 1926, the district court of appeal, 77 Cal. App. 752 [247 Pac. 585], reversed the judgment of conviction on the ground that the defendant had not been accorded a trial to test his sanity as ordered by the court, and the case was remanded for a new trial, with instructions that the defendant be put on trial before a jury for his sanity. On July 7, 1926, the *remittitur* went down from the court of appeal. Not until March 24, 1927, did the defendant have his trial to determine his sanity, at which time the jury returned a verdict that he was sane. On April 11, 1927, the defendant appeared in court for his second trial under the information, at which time the district attorney stated to the court that an indictment had been returned by the grand jury on April 3d, charging defendant with the crime of robbery, being the identical offense charged in the information and for which he had once been tried under the information. The district attorney stated further that by reason of the returning

of the indictment he desired to move the dismissal of the information, which motion was on that date by the court granted. The record shows that the defendant, through his counsel, protested vigorously against the granting of the motion for dismissal, but as we view this case, his protest does not become material. On April 11, 1927, the defendant was arraigned upon the indictment and upon the following day plead not guilty to the charge contained therein. At that time, through his counsel, he made a motion to dismiss the indictment. The hearing on this motion upon which briefs were filed by both sides was continued from time to time until May 3, 1927, when the motion to dismiss was denied. It appears also that the defendant had filed a demurrer to the indictment, which was on May 3d overruled. The trial was set for June 3d, but on that date a motion to dismiss the indictment was again made by appellant and this motion was continued to June 6th, as also the trial. On June 6, 1927, after motion to dismiss was denied, the defendant went to trial on the charge of robbery contained in the indictment. He was found guilty of the charge, and now prosecutes this appeal.

Appellant urges as his first ground for reversal that the trial court erred in not dismissing the information in which the defendant Grace was jointly charged with Newell of the offense of robbery; and, second, that the court erred in sustaining the district attorney's objection to certain records which appellant offered in evidence in support of his plea of once in jeopardy. Both of these points are more or less related in the discussions by appellant in his brief, and we will deal with them together.

We are of the opinion that the trial court erred in not granting the motion of defendant to dismiss the information. (*In re Begerow*, 133 Cal. 350 [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828].) From the time of reversal of the judgment of conviction and during the following nine months the defendant made repeated motions to dismiss the information because of the failure to bring him to trial as provided in section 1382 of the Penal Code. However, inasmuch as the information was finally dismissed, it is of no avail at this time to consider the matter further, unless, as urged by the appellant, he was also entitled to

have the indictment dismissed because of the unwarranted delay in bringing him to trial under the information. The defendant unquestionably had his remedy through filing a petition for *habeas corpus* after the refusal of the trial court to grant his motion for a dismissal, and had he pursued this remedy he undoubtedly would have gained his release from custody. (*In re Begerow*, 133 Cal. 350 [85 Am. St. Rep. 178, 56 L. R. A. 513, 65 Pac. 828].)

But we cannot agree with him that the wrong he suffered through the erroneous ruling of the court in connection with the information attached in any way to the indictment and the proceedings had thereunder. Section 1385 of the Penal Code reads as follows: ''The court may, either of its own motion or upon the application of the district attorney, and in furtherance of justice, order an action or indictment to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes.'' Section 1387 of the Penal Code reads as follows: ''An order for the dismissal of the action, as provided in this chapter, is a bar to any other prosecution for the same offense, if it is a misdemeanor, unless such order is explicitly made for the purpose of amending the complaint in such action, in which instance such order for dismissal of the action shall not act as a bar to the prosecution upon such amended complaint; but an order for the dismissal of the action is not a bar if the offense is a felony.'' There can be no question but what the court had the legal authority to dismiss the information on motion of the district attorney, and, further, that the district attorney was acting well within the provisions of the statute in causing the defendant to be indicted for the same offense, as it appears that the indictment was filed within three years of the date of the robbery. (*People* v. *Follette,* 74 Cal. App. 178 [240 Pac. 502].) The mere fact that the same offense was charged in the indictment that had previously been charged in the information does not establish any legal relation or connection between the information and the indictment. Each was a separate proceeding authorized by the statute and complete in itself. Nothing done while the information was pending could supply a needed step required in the proceedings under the indictment, and manifestly no error committed in con-

nection with the one proceeding could affect the other. The dismissal of the information terminated that proceeding, and so far as the indictment was concerned, effectively disposed of the information as though it had never been filed. When the defendant stood before the court and was arraigned under the indictment, his status was the same as though there never had been an information filed against him, or that he had never been tried under the information, found guilty and the case reversed. In the case of *In re Begerow,* 136 Cal. 297 [56 L. R. A. 528, 68 Pac. 773], we find circumstances comparable to those in the instant case. Begerow had been charged by information with the crime of murder in July of 1900. He had five trials under that information, each trial resulting in a disagreement of the jury. In May of 1901, almost a year after the filing of the original information, when more than sixty days had elapsed subsequent to the last mistrial, Begerow made a motion to dismiss the information on the ground that he had not been brought to trial within sixty days as provided in subdivision 2 of section 1382 of the Penal Code. The court refusing to grant his motion, Begerow filed a petition for *habeas corpus* in the supreme court, and upon hearing he was released, the supreme court holding that he was entitled to a dismissal of the information under section 1382 of the Penal Code. Immediately thereafter the district attorney filed another complaint charging Begerow with the same crime of murder, and he was taken into custody again. His contention that the circumstances preceding his release and the release itself served to stay the hand of the law from any further proceedings charging him with the same offense was not upheld by the court. In a somewhat extended discussion of this very question the supreme court epitomized its conclusion in the following excerpt from the opinion in the case of *Ex parte Clarke,* 54 Cal. 412: "But the order dismissing the prosecution ends the action commenced by the complaint upon which the magistrate issued his warrant of arrest. It ends the action, however, not by any judgment upon the merits of the case, but by an order in the nature of a judgment of nonsuit, a simple expression of the opinion of the court that that particular proceeding ought not to be further prosecuted."

Nor does the fact that the indictment was returned before the information was dismissed, and without any order of the court, affect the situation. (*People* v. *Follette,* 74 Cal. App. 178 [240 Pac. 502].)

Appellant further contends that the court erred in not permitting him to put in evidence the record of his first trial for the purpose of supporting his special plea of "once in jeopardy." The language used by counsel for the defendant in offering the record in question, as also the *remittitur* from the court of appeal reversing the judgment in the first case, indicates that he contended: First, that the proceeding which resulted in a verdict of conviction by the jury, even though reversed by the court of appeal, operated in law as having put him once in jeopardy; and, second, that the delay of some nine months in bringing the defendant to trial under the charge in the information operated also in law as having placed him "once in jeopardy." ■ It has been determined through a somewhat extended line of decisions in this state that a person on trial for an offense, when the judgment of a former conviction of the same offense has been reversed, cannot effectively claim that he was "once in jeopardy" by reason of his first trial. This subject has been so fully discussed by this court, as well as the supreme court, that we feel that a mere reference to several of these cases meets all of the requirements of this opinion. (*People* v. *Frank,* 75 Cal. App. 74 [241 Pac. 924]; *People* v. *Rittenhouse,* 56 Cal. App. 541 [206 Pac. 86]; *In re Begerow,* 136 Cal. 297 [56 L. R. A. 528, 68 Pac. 773].)

■ As to his second point under this head, that the unwarranted delay in according him a second trial under the information furnishes him in law the ground to contend that he was "once in jeopardy," we feel does not warrant any extended consideration, as we can see no merit in such a contention.

Appellant urges that the indictment should have been dismissed because he was not accorded his trial within sixty days from the date of the filing of the indictment. It appears from the record that the indictment was filed on April 4, 1927; that in due course the defendant was arraigned and plead not guilty. At the time of his plea he filed a

motion to dismiss the indictment. It appears that this motion was submitted on briefs and on May 3d the motion to dismiss was denied and a demurrer to the indictment overruled. Subsequently the case was set down for trial on June 3d, which was within the sixty-day period. The minutes of the court in connection with this case on June 3d read as follows: "Motion to dismiss indictment is interposed, and motion is continued to June 6th, 1927. Witnesses are instructed to return." On June 6th appears the following entry in the minutes: "Motion to dismiss indictment comes on for hearing and is denied." Following the denial of defendant's motion to dismiss, he went to trial before a jury on June 6th.

We submit that from this record the appellant is not in a position to seriously contend that he was deprived of a trial within the sixty-day period. The minutes of the court indicate that the court was ready to start his trial on June 3d when he interposed his motion to dismiss, and apparently for some reason, and we must assume that it was a sufficient reason, the hearing on the motion was continued until June 6th, which was apparently the first court day subsequent to June 3d. Manifestly the delay in starting the trial after the sixty-day period had elapsed was due to appellant's own action in filing a motion to dismiss. He cannot now be heard to complain because of the delay occasioned in the hearing of his motion.

Conceding, however, that the court erred in continuing the trial beyond the sixty-day period, we are satisfied that no miscarriage of justice resulted by reason of such delay. The error, if any, is one of procedure and readily comes within the purview of subdivision 4½ of section VI of the constitution. (*People* v. *Zuvela*, 191 Cal. 223 [215 Pac. 907].)

Appellant further urges that in any event he was entitled to have the jury make a finding upon his special plea of "once in jeopardy," and in support of this contention cites the case of *People* v. *Tucker*, 115 Cal. 337 [47 Pac. 111], and other earlier decisions of the supreme court of this state. While it is unquestionably true that in several of the earlier cases the position contended for by appellant has been sustained, it is clearly as true that in recent deci-

sions of this court and of the supreme court of the state of California wherein similar questions were under consideration, the courts, while not directly overruling the earlier cases, unquestionably recognize and give support to a different rule. In the case of *People* v. *Frank,* 75 Cal. App. 74 [241 Pac. 924], after considering the earlier and later cases wherein this question was under consideration, this court said: "From these later decisions we question whether the strict rule invoked in the earlier cases above referred to can now be considered the law of this state. On the other hand, we think it can be reasonably inferred from these later decisions that the appellant may and does waive his pleas of former acquittal and once in jeopardy by his failure to produce any evidence in support thereof, and, furthermore, that the failure of the jury to render a verdict upon said pleas in the absence of any evidence to support them does not result in any prejudice to appellant."

While it is true in the instant case on appeal appellant did offer in support of his special plea the record of the proceedings of his former trial and conviction, this was not legal evidence that could furnish support for his plea of "once in jeopardy," as we have heretofore stated. Hence, the evidence offered being incompetent, there was in effect no evidence as a matter of law tendered to the jury in support of the plea of "once in jeopardy," and under the authority of *People* v. *Frank, supra,* the failure of the jury to find on that issue has not prejudiced the appellant. (*People* v. *Strickler,* 167 Cal. 627 [140 Pac. 270]; *People* v. *Newell,* 192 Cal. 659 [221 Pac. 622]; *People* v. *Stoll,* 143 Cal. 689 [77 Pac. 818]; *People* v. *Brannon,* 70 Cal. App. 225 [233 Pac. 88].)

Appellant complains of certain rulings of the trial court whereby J. F. Koehn, Walter Schubert, and Rudolph Sieger, police officers, were permitted to relate incidents connected with the arrest of Newell and certain alleged statements made by Newell to them at the time of and immediately after his arrest, the defendant Grace not being present on these occasions. This testimony unquestionably was hearsay testimony, and the defendant's objections thereto should have been sustained unless it comes within one of the exceptions wherein hearsay testimony may be given.

The attorney-general in his brief urges that the testimony was properly admitted; first, because Newell was a co-conspirator and there being testimony before the court that Newell and Grace had committed the holdup, a foundation had been laid that would entitle the state to offer testimony of statements made by a co-conspirator; and, second, that the testimony was properly admitted for the purposes urged by the district attorney that it tended to impeach the testimony given by Newell as a witness for the defense.

█ The rulings could not be justified on the ground that the testimony purported to give statements of a co-conspirator, for the reason that it appears that the conversation between Newell and the officers, which the witnesses Koehn and Schubert undertook to relate, occurred after the robbery, and it is well settled that only statements made by a co-conspirator during the existence of the conspiracy may be offered in evidence. These conversations having occurred subsequent to the completion of the robbery were hearsay, and not admissible. (*People* v. *Oldham,* 111 Cal. 649 [44 Pac. 312]; *People* v. *Collum,* 122 Cal. 186 [54 Pac. 589].)

█ However, we are satisfied that the testimony was properly admitted for impeachment purposes. Newell was put on the stand by the defendant, and in his direct examination he testified that the defendant Grace was not with him on the night of the robbery and did not participate with him in the holdup of Maes; that his partner in the robbery was one Edward Miller. The witness further undertook to describe the appearance of Miller, as also the clothing he wore on the night of the robbery. The sole and only purpose of Newell's testimony was to support contentions of appellant that he was not one of the two who committed the crime. On cross-examination Newell was asked by the district attorney if he had not stated to Officers Koehn and Schubert at the police station shortly after his arrest, in substance, that his partner in the holdup was the defendant Grace, and that Grace at the time of the robbery wore a brown khaki shirt and cap, and whether he did not further say to these officers at the same time and place that Grace was staying at number 300 North Lorena Street, and that he, Newell, would take the officers to where Grace resided, but that he would not testify against him. Newell denied

having made any such statement, or statements to that effect, to the officers. Upon rebuttal the district attorney put on the witness-stand Officers Koehn and Schubert, who, in response to the questions which had been asked of Newell for impeachment purposes, testified that Newell had made such statements to them. We are satisfied that the testimony was properly admitted for impeaching purposes. It is true that such testimony would not have been properly admitted for the purpose of proving that Grace did participate in the robbery, but the record clearly shows that the district · attorney offered it solely for impeaching purposes. Unquestionably had the defendant's counsel so requested of the court it would have been the duty of the court to have instructed the jury that this testimony was admitted for a limited purpose, and that they did not have the right to consider it for any other purpose than that of affecting, if at all, the credibility of the witness Newell. We have examined the record and find that no such instruction was requested by the court, and hence the appellant at this time is not in position to find fault, if perchance the jury failed to consider the evidence for the limited purpose offered.

■ As to the testimony of officer Sieger which is complained of, it appears that his testimony was limited to matters attending upon the arrest of Newell. Nowhere in his testimony does he mention Grace, or make reference to any matter that in any way tended to connect Grace with the robbery. While it is true that for these reasons it might well be held that his testimony concerning the arrest of Newell was immaterial in this case, we cannot see wherein this testimony could be regarded as prejudicial to the rights of the defendant.

■ Appellant also criticises the fact that the court permitted Officer Koehn on his direct examination to testify that when in company with Newell they reached the house at number 300 North Lorena Street, Newell pointed to the house and said: "There is where Lacey lives; there is where he stays." (It appears from the record that defendant Grace was sometimes known as Lacey.) Counsel for the defendant objected to this statement of the witness, and the court immediately ordered that it be stricken out and

the jury was instructed by the court to disregard this testimony. We are justified in assuming that the jury followed the instructions of the court.

 The next point urged by appellant is set forth in the following language: "The identification of the defendant by the prosecuting witness Maes was uncertain and weak." While the prosecuting witness Maes in the trial gave positive testimony that he recognized Grace as being one of the two men who held him up, there is some conflicting testimony as to what occurred when on the morning after the robbery Maes was taken to the city jail where Grace was confined, and asked to identify him, if possible, as one of the two men who robbed him. Manifestly the question as to the weight to be given the testimony of the complaining witness in the matter of identification is for the jury to decide, and it would be an improper invasion of the jury's sphere for this court to interfere with the finding. We are satisfied that there is sufficient evidence to support the jury's finding that Grace was one of the two who held up the complaining witness.

 Appellant next contends that the court erred in giving certain instructions to the jury relating to the issue of insanity, and in refusing certain instructions upon the same subject requested by appellant. The court instructed the jury that: "The burden of proof as to the defense of insanity rests upon the defendant and it must be proved by a preponderance of the evidence." This instruction has been repeatedly held to correctly state the law as to the burden of proof, and the weight of evidence required when the defendant offers the plea of insanity as a defense in a criminal case. (*People* v. *Sloper,* 198 Cal. 238 [244 Pac. 362]; *People* v. *Morisawa,* 180 Cal. 148 [179 Pac. 888].) Appellant's contention that while the defendant must carry the burden of proving his plea of insanity, he has met the full requirement of the law by showing that the defendant was committed to the insane asylum, and that upon such a showing the burden shifts back to the prosecution to prove beyond a reasonable doubt that the defendant is sane—is not supported by any authorities to which our attention has been directed.

■■■■ The next instruction complained of reads as follows: ''In order that insanity may be available as a defense to a crime charged, it must appear that the defendant when the act was committed, was so deranged and diseased mentally that he was not conscious of the nature of the wrongful act committed. If he has reasoning capacity sufficient to distinguish between right and wrong as to the particular act he is doing; knowledge and consciousness of what he is doing is wrong and criminal and will subject him to punishment, he must be responsible for his conduct. Although he may be laboring under partial insanity—as, for instance, suffering from some insane delusion or hallucination—still if he understands the nature and character of his action and its consequences—if he has knowledge that it is wrong and criminal, and that if he does the act he will do wrong, such partial insanity or the existence of such delusion or hallucination is not sufficient to relieve him from responsibility for his criminal acts. People suffering from delusions or hallucinations may know right from wrong, but not be responsible for their actions.''

The foregoing instruction, in substance, has had the approval of this court, as well as the supreme court of this state. (*People* v. *Zari*, 54 Cal. App. 133 [201 Pac. 345]; *People* v. *Morisawa*, *supra*.)

We do not deem it necessary to discuss in detail the refused instructions. These instructions were drafted upon the theory that the burden shifted to the prosecution after the defense had put in evidence the record of the defendant having been committed to the insane asylum, and upon the further theory that if there was any reasonable doubt in the mind of the jury as to the insanity of the defendant, this doubt should be resolved in favor of the defendant. It has been repeatedly held, in fact it is no longer a controverted matter in this state, that the burden of supporting a plea of insanity when presented in a criminal prosecution is upon the defendant, and that in order to sustain this burden he must show by a preponderance of the evidence that at the time of the commission of the act he was insane. (*People* v. *Willard*, 150 Cal. 543 [89 Pac. 124].)

But one further point is urged which we feel merits attention, and that is the alleged misconduct of the district

attorney during the trial, and in his argument before the jury. It is first contended that when the district attorney in his argument to the jury referred to and commented upon the testimony of Officers Koehn and Schubert given on rebuttal concerning the alleged statements made by Newell at the time of his arrest, his conduct constituted such error as was prejudicial to the rights of the defendant. As we have already held the testimony was properly admitted, it naturally follows it was the proper subject of comment.

Appellant further contends that when the district attorney in his argument to the jury referred to him as a "criminal," a "desperado," and a "denizen of the underworld," his conduct was such as to constitute prejudicial error. The district attorney in referring to the defendant in the language above quoted undoubtedly allowed himself to go beyond the sphere of proper argument of the evidence in the case. We cannot say that this language constituted prejudicial error. It appears from the record that the defendant admitted on the witness-stand that he had been convicted of and served a term for burglary in the state prison at San Quentin; also that he had plead guilty to a charge of receiving stolen property and had been confined as a narcotic addict. It would undoubtedly aid in maintaining the dignity of the court if counsel in their argument to the jury would confine themselves to a reasonable discussion of the evidence presented in the case and omit the use of epithets and the calling of names.

Appellant, in concluding his brief, complains that the court did him an injustice in permitting a witness for the prosecution to refresh his memory from the transcript of the evidence taken at the preliminary hearing and in refusing a similar right to a witness for the defendant. In our examination of the record we do not find any ruling of the court which justifies this criticism. Moreover, if perchance such a ruling was made, we do not see wherein it would possibly constitute reversible error. Also as to the criticism made that the court should have granted appellant's motion for a "directed verdict," the first answer would be that there is no provision in law for the court to direct a verdict in a criminal case, and if appellant means by the term a "directed verdict" that the court

should have advised the jury to return a verdict of not guilty, then the answer would be that there was abundant evidence to support the verdict of guilty and hence it would have been improper for the court to advise a verdict.

We find no reversible error in the record, and for that reason the judgment and order refusing a new trial are affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 1, 1928.

All the Justices concurred.