[Civ. No. 30706.   Second Dist., Div. One.   May 19, 1967.]

Estate of MARY VOLLHABER, Deceased. MARY SLINEY, Petitioner and Respondent, v. BALDO M. KRISTO-VICH, as Public Administrator, etc., Objector and Appellant.

146

Harold W. Kennedy, County Counsel, Henry W. Gardett and Gerald F. Crump, Deputy County Counsel, for Objector and Appellant.

Armstrong & Brown and Laurence K. Brown for Petitioner and Respondent.

FOURT, J.—This is an appeal from an order which, in effect, revoked letters of administration with the will annexed previously issued to the appellant public administrator, and then issued to Mary Sliney, respondent, letters testamentary.

Mary Vollhaber, a resident of the county of Los Angeles, died on March 20, 1965, leaving an estate in the county. Her adult son, William J. Vollhaber, predeceased her. On April 16, 1965, the public administrator filed a petition for probate of will and for letters of administration with the will annexed. In the petition it is set forth that *"no one is named in said will as executor thereof,"* (italics added) ; that the

names and residences of the devisees and legatees named in the will are: Mary Slivey [sic] 1012 Lincoln Avenue, St. Paul, Minnesota; Geraldine Slivey [sic] (same address as above), William J. Vollhaber, an adult son, predeceased, and Pomona Pacific State Hospital.

"The" will of decedent consisted of three holographic instruments as follows:

"Dec 12—1957

"I Mary Vollhaber will everything (after my funeral expinses), I own, to My Son. To the religious home for retarted children that he shall be living in and who cares for him, the sum of $75 per month as long as he lives. When he dies the balance of the money goes to Mary Sliney and Geraldine Sliney of St. Paul, Minnesota

"Mary Vollhaber"

"Sept 2—1959

"Being of sound mind, I will my home, all belongs [sic] including money to my son, William J. Vollhaber. *I appoint Mary and Geraldine Sliney,* 1012 Lincoln Ave. St. Paul Minesota, [sic] *gaurdians* [sic] *& executrix* [sic] *of my son. They are* to put my son in a regilious [sic] home for boys of his type. *They are* to make the choice and *pay monthly for his care from the money derived from the sale of my home a*nd his social security. At my son's death they are to have the remaining money.

"If any relatives successfully contest my will, I leave each of them one dollar.

"If my son and I die at the same time, I will everything to the Sliney girls.

"Mary H. Vollhaber
4507 Van Noord
N. Hollywood
Cal"

(Italics added.)

In the margin was also written: "Mary infectigate [sic] the Pomona, Calif for the retarded."

"Dec 7, 1962

"Being sound in mind I will all my (a*sse*ts) after my furnorel [sic] & buried [sic] in Mission Cemetery, expenses are paid, to the institution that cares for my retarted [sic] son, preferably Pomona Pacific State Hospital, at the rate of $100 per month for clothing etc. and his burial in Mission

Cemeltry [*sic*]. My assets I mean money from the sale of my separate property and my money in bank.

"Mary H. Vollhaber

"I will two dollars to anyone who successfully contests this Will

"Mary H. Vollhaber

"What is left after Billys [*sic*] death goes to Mary Sliney 1012 Lincoln Ave St Paul Minnesota"

Notice of hearing of the petition for probate of will apparently was published on April 21st, 22d and 28th, 1965, in the Valley Times, North Hollywood, California, and a copy of such notice apparently was supposedly directed to each of the persons as named in the will.

Probate Code, section 328, sets forth in part that the notice of hearing "must be personally served upon . . . the devisees and legatees *named in the will* and all persons named as *executors* who are not petitioning, or mailed, postage prepaid, *addressed to them.* . . ." (Italics added.)

Mary Sliney did not receive any notice from the public administrator. She did, however, receive two letters from estate information service companies which told of the death of Mrs. Vollhaber. She wrote a letter immediately with reference to the subject matter.[1]

---

[1]
"Judge of Probate
  Superior Court of Los Angeles
  Los Angeles, California

      Re: Superior Court of Los Angeles County
         No. 494 766, Estate of Mary Vollhaber

"Honorable Sir:

"I shall appreciate receiving the following information regarding Mrs. Vollhaber:

Date and place of her death; cause of death.

Had she made a will; whom did she name executor of the will?

About three years ago she wrote me, asking me to be executrix of her will, which she was about to make at that time. She also asked that I act as guardian for her retarded son, William Vollhaber—in the event of her death.

Also please advise if her son—William—is still living and what arrangements have been made for him.

Also please advise the names of the contingent beneficiaries if her son is not living.

I thank you.

        Respectfully
        (Miss) Mary A. Sliney
        1012 Lincoln Avenue
        Saint Paul Minnesota
        55105"

"St. Paul, Minn.
  4-17-65"

A representative of the probate division of the county clerk's office replied by letter dated April 21, 1965, in which he advised that Mrs. Vollhaber died on March 20, 1965; that the public administrator had filed a petition for probate of her will and that she could obtain a copy of the will upon the payment of $1.50. Mary Sliney replied on April 24th by enclosing $1.50 and requested a copy of such will. Upon receipt of the copy of the will on Friday, April 30th, she immediately called and made an appointment with her attorney, Richard E. Kyle, in Saint Paul, Minnesota, for the following Monday, May 3d. She delivered the copies of the three holographic instruments which she had received with the correspondence above mentioned. The attorney, Mr. Kyle, wrote on May 3, 1965, to the public administrator as follows:

"Miss Mary A. Sliney of St. Paul has consulted us concerning the above estate.

"She wrote to the County Clerk of Los Angeles County and received from that office photostatic copies of three instruments dated respectively December 12, 1957, September 2, 1959 and December 7, 1962 which appear to be holographic wills executed by the above named decedent. She was also advised by the County Clerk that you had filed a petition for proof of will.

"We are writing to ascertain the present status of the proceeding and to inquire whether it is necessary or advisable for her to retain counsel in Los Angeles to look after her interests under the decedent's will.

"I would appreciate it if you would also advise us as to the date of hearing on the petition to prove the will. . . ."

No reply was received by June 14, 1965, and on that date Mr. Kyle wrote another letter to the public administrator calling his attention to the fact that no reply had been made to his earlier letter.

On June 15, 1965, the public administrator wrote to Mr. Kyle as follows:

"In answer to your letter, dated May 3, 1965, this Office has filed for Letters of Administration C.T.A., and the hearing of the petition for probate of the will was held on May 12, 1965.

"We are noting your office [sic] of assistance, for which please accept our thanks.

"It does not appear necessary for your client to engage local counsel at this time."

This last letter, written more than a month after the hear-

ing and more than six weeks after the original inquiry was made, was the first notice which Mary A. Sliney, or her attorney, had received with reference to the date of the hearing. Further, it was the first notice they, or either of them, had received that the public administrator had petitioned for letters of administration with the will annexed rather than merely for probate of the will.

Mr. Kyle retained and consulted with Armstrong and Brown, present California counsel for Mary A. Sliney. California counsel prepared and filed, on September 28, 1965, a petition for the revocation of the letters of administration previously issued to the public administrator and for the issuance of letters testamentary to Mary A. Sliney. A renunciation of letters testamentary by Geraldine Sliney, and a request by Geraldine that Mary Sliney be appointed to act as executrix and that letters testamentary be issued to her, and copies of all the correspondence, were attached as exhibits to the petition. The petition last mentioned sets forth that no notice of the hearing had been received, or of the fact that the public administrator sought to have letters of administration issued to himself until after the hearing had been held.

The petition was heard on November 4, 1965. Evidence disclosed that the house and lot (the major asset of the estate) had been and was being badly neglected by the public administrator. The letters of administration issued to the public administrator were ordered revoked and Mary A. Sliney was appointed as executrix of the estate.

Appellant now asserts that Mary Vollhaber did not effectively appoint respondent as the executor of her estate and, further, that in any event the matter is res judicata and the judge had no authority to make an order overriding the first order. We conclude that there is no merit to appellant's contentions.

Admittedly the words "I appoint Mary and Geraldine Sliney, 1012 Lincoln Ave. St. Paul Minesota, gaurdians [sic] & executrix [sic] of my son" are ambiguous. However, the trial judge took testimony and concluded that decedent meant by what she wrote that Mary and Geraldine Sliney should be the executrices of her estate. The word "executrix" as used is completely inoperative, meaningless and without effect unless it is construed as did the trial judge. Probate Code, section 102, provides in part that the words of a will "are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; . . ." Decedent in the same instru-

ment directed that Mary and Geraldine Sliney "are to put my son in a regilious [*sic*] home for boys of his type. They are to make the choice and pay monthly for his care from the money derived from the sale of my home . . ."

The provision with reference to the sale of the home charged Mary and Geraldine Sliney with the duties which only an executrix could perform. There can be no doubt that Mary and Geraldine Sliney are designated as an executrix. In *Estate of Henderson*, 196 Cal. 623 [238 P. 938] the court had under consideration an holographic will where the words " 'And Request that Frank Cutting have Charge of my affairs' " were written by the testatrix. (P. 626.) The court said at page 639 : "This language means, as is naturally to be inferred from the connection in which it is used, that the deceased desired and intended that said Cutting, her son-in-law and a legatee by the terms of her testament, should be appointed as the executor thereof. Indeed, it would be difficult reasonably to give that language any other interpretation. Where the intention of a testator that a certain person shall be named as executor to carry out the terms of his will is not expressed therein with directness, but is reasonably deducible from the language thereof, it is the duty of the court sitting in probate to respect that intention and so appoint such person as such executor."

In *Estate of Spencer*, 203 Cal. 424 [264 P. 765] the court had under consideration the words, " 'I desire my two friends Wallace W. Wemott and Robert R. Curry to act without bond as custodians of property for both children and guardians for Lois Roberta Spencer.' " in a holographic will. (P. 425.) The court stated at page 426 :

" 'The important thing is the intention of the testator (sec. 1317). This is to be ascertained from the words of the will, taking into view the circumstances under which it was made (sec. 1318). All parts of the will are to be considered in relation to each other so as to form, if possible, a consistent whole (sec. 1321). Words are to be taken in their ordinary grammatical sense, unless a clear intent to use them otherwise is apparent and that sense can be ascertained (sec. 1324). Technical words are not to be taken in their technical sense if it satisfactorily appears that the will was drawn solely by the testator and that he was unacquainted with such technical sense (sec. 1327). "A technical construction of words and phrases, although *prima facie* the one which should prevail, will not go to the extent of defeating any obvious general

intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulas.'' (Citing numerous authorities.)'

''In the instant case, also, section 1371 of our Civil Code is applicable. That section provides that when it appears by the terms of a will that it was the intention of the testator to commit the execution thereof and the administration of his estate to any person as executor, such person, although not named as executor, is entitled to letters testamentary in like manner as if he had been so named.

''It is apparent that there is some ambiguity and a lack of precision in the language of the testatrix, which is not unusual in holographic wills. In solving a problem such as is presented here, each case must depend upon its own peculiar facts, as was pointed out in *Estate of Henderson,* 161 Cal. 353 [119 P. 496].

''We do not think the court abused its discretion in making the order appealed from and that order is affirmed.''

Also, the letter of April 17, 1965, to the ''Judge of Probate,'' admitted into evidence without objection and without limitation as to its purpose, contains evidence of the intent of decedent to appoint Mary Sliney as the executrix of her will. ▮ Such evidence can be considered where an uncertainty arises from the face of the will itself. (See Prob. Code, § 105.)

▮ In this case it is clear that the public administrator did not serve a notice of the hearing upon Mary Sliney. The affidavit of mailing shows that a copy was mailed to a ''Mary Slivey.'' Probably the error in spelling in the notice and in the affidavit of mailing came about from the misspelling of the name of Mary Sliney in appellant's petition for probate of the will. In any event, Mary Sliney never received a copy of the notice of the hearing of the petition prior to the date of the hearing. It is apparent that the provisions of section 328, Probate Code,[2] were not complied with.

In *Farmers etc. Nat. Bank* v. *Superior Court,* 25 Cal.2d 842, at pages 845 and 846 [155 P.2d 823], it is said :

''As there is no vested right to succession, it is subject to such conditions and limitations as the Legislature may prescribe. [Citation.] The statutory requirements must be fol-

[2]Section 328 of the Probate Code provides in part as follows:
''. . . copies of the notice must be personally served upon . . . *the devisees and legatees named in the will and all persons named as executors* who are not petitioning, or mailed, postage prepaid, from a post office within this State, *addressed to them* . . . .'' (Italics added.)

lowed and the courts are powerless to make exceptions not provided by the Legislature. [Citation.] Courts should be particularly alert to require compliance with statutory provisions relating to constructive notice, for a departure therefrom constitutes a denial of due process. [Citation.] In addition to the publication or posting of notice required by section 327, the Legislature has prescribed that copies of the notice 'must' be personally served or mailed in the stated manner. The terms employed are mandatory, and no exceptions are provided.

". . . . . . . . . . . . .

"The distinction to be made in cases such as those relied upon by the petitioner and one where the failure to give notice appears upon the face of the judgment roll, is stated clearly in *Estate of Ivory*, 37 Cal.App.2d 22, 28-30 [98 P.2d 761]. There the judgment roll showed that notice had not been given to a named heir and, distinguishing the *Murray* and *Nicholson* cases, it was held that an order admitting a will to probate which includes the names of known heirs who have not been notified of the hearing is void upon its face, and the probate court, at least up to the time of closing the estate, has power to set it aside."

Under the circumstances Judge Wright had the power to set aside any order previously made upon the erroneous assumption that Mary Sliney had received notice of the first hearing.

Further, the trial judge had the right under section 473, Code of Civil Procedure, to revoke the previous order for that order obviously was secured by means of an extrinsic fraud. (See *In re Johnson*, 7 Cal.App. 436, 438-439 [94 P. 592]; *Estate of Strobeck*, 111 Cal.App.2d 853, 858-859 [245 P.2d 317]; *Guardianship of Levy*, 137 Cal.App.2d 237, 243 [290 P.2d 320].)

Furthermore, the order is supported by the public administrator's waste and mismanagement of the estate prior to the hearing of the petition of Mary Sliney. (See Prob. Code, §§ 521, 522, 523; *Estate of Wacholder*, 76 Cal.App.2d 452, 456 [173 P.2d 359]; *Estate of Palm*, 68 Cal.App.2d 204, 210 [156 P.2d 62].)

The order is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 12, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 12, 1967.