[Civ. No. 32852.   Second Dist., Div. Five.   Aug. 14, 1969.]

P. LEE, Plaintiff and Appellant, v. MAX OFFENBERG et al., Defendants and Respondents.

Cooper & Friedlander and Harvey G. Cooper for Plaintiff and Appellant.

Mike Mayo for Defendants and Respondents.

STEPHENS, Acting P. J.—Plaintiff's assignor leased certain printing equipment to defendants Dr. Max Offenberg, Marie Offenberg, and Leon J. Perales. Paragraph 20 of the written lease provided that "if more than one Lessee is named in this lease the liability of each shall be joint and several." Defendants defaulted, and suit on the lease was commenced

on December 22, 1965. The Offenbergs answered, but Perales did not, and his default was entered January 19, 1966. A motion for summary judgment was made as to the Offenbergs, and this was denied on May 3, 1966. Attorney Friedlander sent a request for default hearing as to Perales by letter, and this request contained the statements that:

". . . The other two defendants, Dr. Max Offenberg and Marie Offenberg have answered our lawsuit, and we are presently proceeding against them on their guaranty. Leon J. Perales was primarily liable on this lease contract.

"We are informed that he presently has assets upon which we can partially satisfy our claim and we would like to obtain judgment now in order to proceed on execution against Mr. Perales, with leave from the Court to still proceed on the pending lawsuit against the other parties. . . ."

On June 28, 1966, attorney Blatt, who was associated with the same firm of attorneys as attorney Friedlander, appeared in Department 63 of the Los Angeles Superior Court on the default hearing to be heard before Judge pro tem. Natoli. The default was submitted upon the same affidavits theretofore filed in support of a previous motion for summary judgment. The following colloquy between the court and Mr. Blatt took place at the June 28 hearing: " [Mr. Blatt] : And we ask leave to continue proceedings against the other two defendants who have filed answers. [The Court] : That will be granted." On July 1. 1966, a minute order was filed granting judgment against Perales, but making no reference to the requested reservation.

The case against the Offenbergs was called for trial on June 28, 1967, at which time a motion to dismiss was made by the defendants. The premise of the motion was that a judgment had previously been rendered in the case against defendant Perales without reservation to proceed against the remaining defendants, and that section 579 of the Code of Civil Procedure required a reservation.[1]

Being confronted with the file and the incomplete record before them, the following colloquy took place between attorney Friedlander and Judge Weisman:

"Mr. FRIEDLANDER: . . . However, I would like to make a certain representation to the Court, this representation being

---

[1] Code of Civil Procedure section 579: "In an action against several defendants, the Court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper."

that I sent a letter to Commissioner Natoli's attention, to his clerk, Mr. Lee Solomon, and during my discussions with Mr. Lee Solomon and Mr. Natoli, I had requested leave of the Court to proceed under Section 579 of the California Code of Civil Procedure against the Offenbergs.

"It is the normal procedure and practice in Commissioner Natoli's court that a plaintiff would not be permitted to proceed against other defendants unless the other—excuse me. The Court would not render judgment against one defendant unless the plaintiff's attorney submitted a dismissal against the other defendants.

"Now, had I been advised that the Court could not render a judgment against the other defendants if judgment was rendered against Perales, I would not have obtained a judgment against Perales, assuming that Mr. Mayo's position is correct. Therefore, in the event that the Court does take Mr. Mayo's position as being correct, I at this time would like to make a motion to set aside the default against Perales on two grounds:

"The first ground was that, one, the Commissioner was not authorized to render a judgment against Perales, and the second ground, that I was misled by the Court when I obtained this judgment against Perales, and on the third ground, that, on equitable ground, my client should not be barred from proceeding against Offenbergs because of a mistake of a Court by the plaintiff's counsel.

"THE COURT: Well, this is a trial court. You would have to make that motion before the same court that entered the judgment. Was that Department 63?

"MR. FRIEDLANDER: That is correct, your Honor.

"THE COURT: I suggest this: We did discuss in chambers as to the possibility of entering into certain stipulations so that your client would not have to come back here, and I also suggested that you have some time to prepare any authorities that you wish on this motion.

"Do you have any stipulations that you would like to present?

"MR. FRIEDLANDER: Yes, your Honor.

"THE COURT: I will take both of your motions under submission, with the indication that if I grant Mr. Mayo's motion your motion will have to be renewed up in Department 63.

". . . . . . . . . . . .

"MR. FRIEDLANDER: Your Honor, one point, in the event you do rule in my favor, the trial will continue on July 25th.

"The Court: That is right."

The matter was then continued to July 25, 1967, so that each side could file points and authorities on the motion to dismiss made by the defendants and ("in the event that the court does take Mr. Mayo's position as being correct") a motion by plaintiff to set aside the default against Perales (the defaulting defendant).

On July 25, the motions were argued, and the plaintiff's motion to set aside the default judgment was denied; the defendants' motion to dismiss was granted, apparently on the theory that the default judgment as signed and filed contained no reservation to proceed against the other defendants. The signed judgment states in part that "the court then granted defendants' motion to dismiss on the grounds that said judgment of July 1, 1966, was res judicata as to all defendants," and judgment was ordered for defendants for costs. This judgment was filed July 28, 1967.

Following the judgment of dismissal, plaintiff, by motion duly noticed, promptly sought correction, *nunc pro tunc,* of the July 1, 1966, judgment. After hearing argument, an "Order Correcting Minute Order and Judgment Nunc Pro Tunc" was signed and filed on August 24, 1967. This order and judgment corrected the July 1, 1966, judgment against the defaulting defendant by adding the following: "It is further ordered, adjudged and decreed that a several judgment is proper and that the plaintiff is hereby granted leave to proceed against the defendants Max Offenberg and Marie Offenberg, pursuant to section 579 C.C.P." On August 11, 1967, plaintiff filed a notice of motion for new trial and for reconsideration of the motion to dismiss, with hearing to be in Department 27 (Judge Weisman) on August 29, 1967. On the 29th, argument was had on the motions. The transcript of the July 1, 1966, hearing was referred to, and was in the file then before Judge Weisman. This transcript confirmed the representation that the court orally had reserved the right of plaintiff to proceed against the nondefaulting defendants. Also before Judge Weisman was the *nunc pro tunc* order of August 24, 1967, correcting the clerical omission of the reserved right to proceed against the nondefaulting defendants. At the hearing on August 29th, the judge inadvertently thought that he had given plaintiff until July 25th "as much time as you [plaintiff] wanted to try to set aside that default [judgment] because nothing was in the record that you [plaintiff] could proceed. So you [plaintiff] had all the time you wanted

. . ." In fact, the judge had said that "if I grant Mr. Mayo's [defendants' attorney's] motion your motion will have to be renewed up in Department 63."[2] It is apparent that the plaintiff had not been instructed to have the default judgment corrected prior to the July 25th hearing, though good trial procedure might well have dictated it. The motions for new trial and for reconsideration of the judgment of dismissal were denied.

Plaintiff appeals from the judgment of July 25, 1967, and from the order denying his motion for reconsideration of the defendants' motion resulting in such judgment.

Skipping, for the moment, the appeal from the July 25 judgment, the plaintiff does not seriously argue that there was a valid motion for new trial before Judge Weisman on August 29. A new-trial motion would have been proper (*Carney* v. *Simmonds*, 49 Cal.2d 84 [315 P.2d 305]), but plaintiff failed to comply with the statutory requirements of Code of Civil Procedure section 659,[3] and the defects in the motion were objected to and at no time waived by defendants. Though the court purported to deny the motion for new trial, no appeal has been taken from that denial. We therefore concern ourselves solely with the denial of the motion to reconsider the order of dismissal. ■■■ It is plaintiff's position that this motion is within the broad provisions for relief covered by Code of Civil Procedure section 473. We concur with plaintiff, for the last paragraph of section 473 states: "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on

---

[2]The plaintiff's motion to correct the July 1, 1966, default judgment *nunc pro tunc* was actually not the motion to which the court or counsel had directed their thoughts. The motion involved in the June 28th and July 25th discussions was one to *dismiss* the default judgment against Perales, and not one to *correct* that judgment.

[3]Code of Civil Procedure, section 659 (as of the date of the motion here involved and before the subsequent 1967 amendment thereto):

"The party intending to move for a new trial must file with the clerk and serve upon the adverse party a notice of his intention to move for a new trial, designating the grounds upon which the motion will be made and whether the same will be made upon affidavits or the minutes of the court or both, either ·

"1. Before the entry of judgment; or

"2. Within 10 days of the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or service upon him by any party of written notice of entry of judgment, or within 180 days after the entry of judgment, whichever is earlier.

"Said notice of intention to move for a new trial shall be deemed to be a motion for a new trial on all the grounds stated in the notice. The time above specified shall not be extended by order or stipulation."

motion of either party after notice to the other party, set aside any void judgment or order." ██ *Taliaferro* v. *Taliaferro*, 217 Cal.App.2d 216 [31 Cal.Rptr. 774] is adequate authority that Code of Civil Procedure section 473 is to be liberally construed to the end that cases may be disposed of on their merits. And *Adamson* v. *Adamson*, 209 Cal.App.2d 492 [26 Cal.Rptr. 236] holds that a motion pursuant to section 473 is one means of relief from a void judgment.

██ It is difficult for us to say that as of July 25, 1967 (the date of the court's order of dismissal), the order was void, when the then record appeared to sustain the legal holding of the court. At this point in time, the order was merely voidable. What appeared of record at that time, however, was itself erroneous, and its very incompleteness constituted the legal misinterpretation resulting in the voidable dismissal. We do not criticize the court, but rather sympathize with it because of the predicament in which the court was placed. Nevertheless, the judgment of default entered on July 1, 1966, was not in truth and fact the judgment of default which the court had ordered. This was established as true by the subsequent corrective judgment *nunc pro tunc.* Thus, what appeared to be a legally proper dismissal by order of July 25, 1967, was voided *ab initio* by the order of August 24, 1967, drastically altering the legal positions of the parties. While this seems to result in a most unfair situation so far as the trial judge was concerned, the moment the motion to reconsider was brought before him, any unfairness dissipated. All of the true facts were laid bare, and full opportunity was presented to void of record the July 25th dismissal order to comply with the legal principles actually applicable, rather than with those which had seemed applicable.

The parallel between the instant case and that of *Estate of Vollhaber*, 251 Cal.App.2d 145 [59 Cal.Rptr. 169] as it relates to the propriety of the correction of an erroneous judgment is inescapable. There, the court was originally presented with the fact that all persons entitled to notice of a petition for appointment of administrator of an estate had been properly noticed. Upon such information, the court issued letters. Subsequently, it was established, upon a petition to revoke the issued letters and for letters to issue to a different person, that no notice had in fact been sent to a person entitled to notice and entitled to priority of appointment. The court said (p. 153) : "Under the circumstances Judge Wright had the power to set aside any order previously made upon the

erroneous assumption that Mary Sliney had received notice of the first hearing. Further, the trial judge had the right under section 473, Code of Civil Procedure, to revoke the previous order for that order was obviously secured by means of an extrinsic fraud. [Citations.]'' While there was no ''extrinsic fraud'' perpetrated by the one department of the superior court upon another department of the same court in failing to properly set forth its judgment, the fact remains that the judgment of the later department was premised upon an erroneous (incomplete) recital of judgment of record filed by the first department. ■ Defendants urge that the *nunc pro tunc* correction of the default judgment was void, for it sought to correct a judicial and not a clerical error. This contention is without merit. The statements of Judge pro tem. Natoli at the time of pronouncing the default judgment and his *nunc pro tunc* order clearly establish his intention to grant judgment with reservation to proceed against the remaining defendants. ■ As was stated in *Gill* v. *Epstein,* 62 Cal.2d 611 at pp. 614-615 [44 Cal.Rptr. 45, 401 P.2d 397] : ''These rules are here applicable : [¶] (1) Independent of statute, a trial court has power to correct mistakes and to annul orders and judgments inadvertently or improvidently made. A trial court has power to vacate judgments and orders inadvertently made which are not actually the result of the exercise of judgment. It has no power, however, having once made its decision after regular submission, to set aside or amend judicial errors except under appropriate statutory proceedings. (*Estate of Doane, ante,* 62 Cal.2d, pp. 68, 71 [2] [41 Cal.Rptr. 165, 396 P.2d 581].) ■ [¶] (2) In determining whether an error is clerical or judicial, great weight should be placed on the declaration of the judge as to his intention in signing the order. (*Estate of Doane, supra,* at p. 71[3].) ■ [¶] (3) The distinction between a clerical error and a judicial error does not depend so much on the person making it as it does on whether it was the deliberate result of judicial reasoning and determination. (*Estate of Doane, supra,* at p. 71 [4].) ''

■ We recognize that Code of Civil Procedure section 473 provides for discretionary application by the court, but this does not permit of arbitrary consideration. Where the sole issue is one of law and the applicable law demands a given result, the court's determination of the issue contrary thereto, while recognizing the proper legal principle, is an abuse of discretion.

If it can be said that an error of law brought about the judgment of July 25th, and there was not an abuse of discretion at the time of the motion to reconsider, reversal is nevertheless required. ▮ "A superior court is but one tribunal, even if it be composed of numerous departments. . . . An order made in one department during the progress of a cause can neither be ignored nor overlooked in another department in which the cause falls by transfer. The order made by [the judge presiding in the former department] was as binding and effective in the [latter] department . . . as if the latter judge had made it himself." (*People* v. *Grace*, 77 Cal.App. 752, 759 [247 P. 585].) Accordingly, we have conflicting adjudications of the same subject matter by different departments of the same court. The order made by the judge presiding in the former department was "*the order of the superior court* and it was binding and effective upon other departments of that court." (*People* v. *Rosas*, *(Cal.App.) 72 Cal. Rptr. 65.)

The judgment is reversed.

Aiso, J., and Reppy, J., concurred.

---

*A rehearing was granted October 25, 1968. Appeal dismissed and certified for nonpublication November 12, 1968.