[No. D006664. Fourth Dist., Div. One. Jan. 4, 1990.]

SANDCO AMERICAN, INC., Plaintiff and Appellant, v. LEON NOTRICA et al., Defendants and Appellants.

[Opinion certified for partial publication.[1]]

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

Davis, Samuelson, Blakely & Goldberg and Noel K. Torgerson for Plaintiff and Appellant.

Michael T. Pines for Defendants and Appellants.

OPINION

**TODD, J.**—After a trial by the court sitting without a jury, the trial court entered a $1.4 million judgment for Sandco American, Inc. (Sandco), and against Leon Notrica and Campo de Leon Corporation (CDL or, collectively, Notrica) on Sandco's breach of contract count in its first amended complaint. The first amended complaint included two fraud counts and a count for tortious breach of the covenant of good faith and fair dealing that were dismissed upon Notrica's motion for judgment under Code of Civil Procedure[2] section 631.8. The trial court granted the motion of CDL and Notrica for a new trial on the ground stated in section 657, subdivision 1, irregularity in the proceedings of the court by which CDL and Notrica were prevented from having a fair trial. Rejecting all other grounds urged for granting a new trial, the court specifically found CDL and Notrica "were prevented from having a fair trial," and stated the irregularities in the proceedings were as follows:

"(1) The order of the Court dated January 9, 1986 under Local Rule 9.2 of VII of the San Diego County Superior Court, closing down time for discovery as of July 2, 1986.

"(2) The order of the Court dated July 18, 1986, denying defense counsel's request to extend the cut-off date for discovery.

"(3) The Court's order dated August 15, 1986, denying defense counsel's motion for relief from the court set discovery cut-off dates.

"(4) The Court's order dated September 10, 1986, denying defendants' motion to continue the trial so that defense counsel could take depositions.

"(5) The Court's order dated October 2, 1986, after the case had been sent out to trial, denying defendants' motion to continue the trial.

"All the said orders prevent [*sic*] counsel from taking the depositions within the time permitted by the Code of Civil Procedure and by Court

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

Rule 333 thereby constituting error and preventing defendants from having a fair trial."

Sandco appeals the order granting a new trial. CDL and Notrica have filed their notice of cross-appeal from the underlying judgment. (See Cal. Rules of Court, rule 3(c).)

Concluding that the orders relating to discovery cited by the court in its order granting a new trial fall within the meaning of "[i]rregularity in the proceedings . . . by which either party was prevented from having a fair trial" in section 657, and that Sandco has not made the necessary showing the trial court abused its discretion in granting the motion, we affirm the order and dismiss the cross-appeal. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 393, p. 392, "[I]f, as is usual, the order granting a new trial is affirmed, the effect is that there is no longer a final judgment. Hence, the merits of the cross-appeal will not be considered, and the appropriate order is a *dismissal* of that appeal. [Citations.]" (Original italics.).)

## FACTS

Notrica owned a large parcel of raw land in the San Marcos area known as Santalina Hills. Notrica was in the process of subdividing and developing Santalina Hills into a mobilehome park. Sandco was interested in subdividing and developing the property into a manufactured housing subdivision.

The trial court's statement of decision contains the facts stated in the following paragraphs:

In 1983 Notrica listed the property for sale with a real estate firm and offered the land with an approved tentative map together with all development plans and specifications generated by civil engineers, L&S Consultants, i.e., Ronald Luttio. The written contracts between L&S and Notrica provided that Notrica was to pay L&S $115,000 when the property was sold. The trial court found the L&S engineering work, including surveying notes, hydrology and hydraulic studies, original topographic maps, grading plans, street improvement plans, utility plans, all tentative and final maps, and engineering plans for tentative and final maps, was a major component of the value of the land because it facilitated the development into residential lots.

Sandco, by Messrs. Steven A. Newman and Stanley Grecian, learned of the property through Sheldon Coler, as evidenced by Notrica's written agreement to pay Coler a $40,000 finder's fee. Coler obtained from Notrica and delivered to Sandco certain copies of some L&S engineering work.

Notrica represented and promised, from November 1983 through March 9, 1984, that the land was being sold to Sandco with all engineering work, plans and specifications of L&S Consultants, and Sandco designated L&S Consultants as its civil engineer in loan documentation for a $13 million loan from Vernon Savings & Loan. Notrica showed Newman and Grecian certain plans and L&S cost estimates at the property site, and took Newman and Grecian to interview Luttio of L&S. Sandco was made aware of the debt to L&S by Notrica and Luttio himself.

Sandco executed an option agreement dated December 9, 1983. January 30, 1984, and March 9, 1984, Ticor escrow instructions, as amended, referred at numerous places to the development phases, lots and construction-sales schedules all as provided in the L&S plans and the tentative map.

Notrica promised and represented to Sandco up to close of escrow that L&S would be paid off through the escrow.

On March 9, 1984, Sandco and Notrica concurrently executed final escrow instructions (which also referred to the development phases described in the L&S plans and engineering estimates), and a written "Indemnity Agreement." The trial court resolved the conflicts in testimony to conclude that the intent of the parties was that, in lieu of payment to L&S through escrow (i.e., in consideration of Sandco's agreement to forego the payoff of L&S through escrow), Notrica and Gary Sparks (in-house attorney for CDL) promised, under the indemnity agreement, to pay off L&S immediately after escrow. The purpose of the indemnity agreement was to ensure that L&S would be immediately paid by Notrica and thereby L&S would continue as Sandco's "project engineer," and that the L&S engineering work would be immediately put to use by Sandco. Notrica and Sparks reviewed the Sandco-Vernon Savings and Loan documents, among which the loan agreement designated L&S as "Project Engineer."

On or about March 16, 1984, Notrica delivered two $57,500 checks to L&S (without interest of some $5,000 which Notrica had previously agreed in writing to pay), and L&S accepted these checks as an accord and satisfaction. Two days after delivery to L&S, Notrica stopped payment on the checks. The checks were signed by Notrica and annotated that they constituted "payment in full for all engineering and surveying on Santalina Hills."[3]

---

[3] The trial court found, upon resolving conflicts in the testimony of the parties, that the escrow instructions, the indemnity agreement and CDL's two checks constituted memoranda (as explained by testimony) satisfying the requirements of Civil Code section 1624. It further found there was sufficient evidence of a "memorandum subscribed by the party to be charged," in conformity with the allegations in the first amended complaint.

Sandco arranged a meeting for the week after close of escrow for all major subcontractors and L&S Consultants. L&S refused to attend, on advice of its attorney. Sandco demanded that the L&S engineering work be delivered, but L&S refused because they had not been paid. Notrica assured Sandco that he was negotiating with L&S and they would be paid. Notrica's letter to L&S dated April 19, 1984, stated that L&S was "authorized" to release the engineering work to Sandco.

Notrica filed a lawsuit against L&S in San Diego Superior Court No. N-25572 seeking a writ of possession to deliver the engineering plans to Sandco. The writ was denied. Notrica's admissions in his lawsuit against L&S (San Diego Super. Ct. No. N-25572) included the following:

"4. On or about March 9, 1984 CDL sold said property [to Sandco] *as developed pursuant to the engineering contract.*

"
. . . . . . . . . . . . . . . . . .

"8. Sandco is unable to proceed with further development of the property until such documentation [plans and specifications] is received and claims to be incurring damages as stated in its attorneys letters . . . .'

The trial court concluded: Notrica failed and refused to pay L&S to deliver the promised engineering work thus violating his agreement to pay L&S in violation of the covenant of good faith and fair dealing; and in violation of the covenant of good faith and fair dealing, Notrica thereafter repudiated and denied the existence of any promise or obligation to pay L&S or to deliver the L&S engineering work, without justification.

With respect to damages the trial court found Notrica was fully aware, prior to the January 30, 1984, and March 9, 1984, escrow instructions and indemnity agreement, of Sandco's critical need for the L&S engineering work *and* for L&S to act as project engineer; Notrica was equally aware of Sandco's intent to proceed immediately with grading on the project within 30-60 days after close of escrow; Notrica and Sparks (the latter as agent for Notrica) also knew, as of the close of escrow, of the potential harm which would be caused by interference with construction by the lack of delivery of the plans, etc.; and Notrica knew or should reasonably have known that Sandco would be delayed as much as 1 year if L&S and its engineering work could not be used, and that Sandco could not build and sell out the project in 6 months.

Sandco lost confidence in Notrica's assurances in mid-April 1984 and to mitigate damages undertook to obtain a new civil engineer. On or about May 10, 1984, Sandco entered into a written agreement with MimMack

Engineering for civil engineering services to replicate L&S's engineering at a contract cost of $49,550, $34,600 of which would be incurred if certain L&S engineering work could not be obtained. L&S refused to release it. Although L&S's plans were in substantial conformity with governmental requirements so as to permit the commencement of grading within 30 to 60 days after close of escrow, the MimMack plans were not completed and approved until May 15, 1985. Sandco was also required to engage Brown & Vogt, civil engineers, to handle local processing with San Diego County and other governmental agencies, at a cost of $43,163.92.

The court analyzed the evidence during trial and after submission of the case. The court rejected Notrica's contention that the delay was as little as three weeks, and instead determined the delay to be not less than six months, computed as follows:

"(a) From the close of escrow on March 13, 1984 and the hiring of a new engineer on May 10, 1984;

"(b) A period of three months thereafter to permit the new engineer to be at the position where he would have been had Sandco received the benefits it would have received had the contract not been breached as aforesaid; and

"(c) A period of one month in connection with the 'Chocolate Lillies' environmental open-space problem."

The court detailed items of damages allowed, including such things as interest expenses, loan fees, loan servicing costs and additional real property taxes due to the delay.

Although Sandco paid Mr. Robert Reimer monthly supervision fees of $4,566.66 beginning October 27, 1984, the court determined this element of damages claimed by Sandco was not proximately caused by defendants. Although Sandco claimed it lost profits of $4 million to $8 million, the court determined that Sandco had failed to prove by a preponderance of the evidence the element of causation.

On June 14, 1984, in the Orange County Superior Court, Sandco filed its complaint alleging, among other things, breach of the March 9, 1984, agreement that Notrica would "pay for and obtain certain engineering plans and drawings generated by L & S . . . for subdivision of the Property as San Diego County Tentative Tract Map No. 4374," and would convey the Santalina Hills property together with "all L & S engineering plans and drawings" for which Notrica had paid or was to have paid, which plans and drawings did and would become the property of Sandco, and that neither Sandco nor the property would be subject to any lien or liability arising out of any labor or services by L&S or Luttio for the engineering plans and

drawings. The complaint alleged Sandco was damaged in an unknown amount, but not less than $250,000.

On Notrica's July 12, 1984, motion for change of venue, the case was transferred to the San Diego County Superior Court on August 7, 1984. On August 9, 1984, Sandco dismissed its complaint as to L&S and Luttio. Notrica answered the complaint on September 21, 1984. On May 23, 1985, over Notrica's objection, Sandco filed its first amended complaint. As in the original complaint, it was alleged in the first amended complaint that "[o]n or about March 9, 1984, Plaintiff, and [sic] Notrica and Campo De Leon, entered [sic] into a written indemnity agreement ('the Indemnity Agreement'), the intent, understanding and purpose of which, together with the Escrow Instructions, and consonant with the oral promises and representations of Notrica and Campo De Leon, was that," and describing the terms of the agreement in the following paragraphs. The terms of the agreement were alleged in the same language as in the original complaint, that is, to deliver "certain engineering plans and drawings generated by L&S and Luttio," etc. Notrica filed its answer and demurrer to the first amended complaint on September 16, 1985.

On September 30, 1985, Sandco filed a voluntary petition for a chapter 11 reorganization in the United States Bankruptcy Court for the Central District of California. Notrica later filed a chapter 11 adversary action against Sandco.

On October 29, 1985, Sandco filed an at issue memorandum. After Notrica filed a counter at issue memorandum, the parties were served with notice of trial setting conference for January 9, 1986.

As a result of the trial setting conference, a discovery cutoff date of July 2, 1986, and a trial date of September 30, 1986, were ordered. Notrica did not stipulate to these dates.[4]

On April 22, 1986, Notrica served contention interrogatories on Sandco. In Sandco's May 22, 1986, answer to the interrogatories, its theory of liability is stated, in part, to be: "Sandco made reasonable attempts to cause Notrica to perform after learning of Notrica's breaches and recognizing the

---

[4] Sandco asserts Notrica stipulated to these dates but gives no citation to the record in support of the assertion. Notrica asserts it refused to sign a stipulation which would change the time allowed to do discovery by the Code of Civil Procedure and the California Rules of Court. There is no stipulation in the record on appeal. Under these circumstances, and considering Notrica's assertion was made in a declaration in support of the new trial motion granted by the trial court, we deem it to be a fact that there was no stipulation by Notrica to the dates set for discovery cutoff and trial.

worthlessness of his promises that the engineering work would immediately be delivered to Sandco. When Sandco first learned in mid-March, 1984 that L&S would not deliver the engineering work, Sandco made oral demands on Notrica, but Notrica refused to pay L&S, Notrica's only response being the transparently malicious filing of an action against L&S alleging negligence (statutorily barred by the 1983 written accord and satisfaction, and barred by Luttio's 1984 reliance on Notrica's promise to pay, causing the withdrawal of L&S's demand from escrow). Notrica and his attorneys repeatedly assured Sandco and its attorneys in March and April, 1984 that Notrica would take all actions necessary to deliver the plans to Sandco."

In the meantime, on May 2, 1986, the motion of Sandco's attorney, Noel K. Torgerson, to withdraw as counsel was heard and denied after the court heard Torgerson had not obtained approval from the bankruptcy court for payment of his fees and continued prosecution of this litigation. Sandco was represented in the bankruptcy proceeding by a different attorney, Charles T. Morrison, Jr., with whom Notrica's counsel had been having settlement discussions since approximately February 1986. On June 9, 1986, Sandco's bankruptcy counsel informed Notrica that Sandco would be continuing with the prosecution of this lawsuit. Notrica's telephonic efforts of June 13 and 16, 1986, to schedule depositions convenient with Sandco were unsuccessful. Notrica had determined it was necessary to take the depositions of Steven Newman and Stan Grecian, principals of Sandco; Sheldon Coler, who received a finder's fee from Notrica and who delivered certain copies of L&S engineering work to Sandco; and Luttio, principal of L&S.

On June 23, 1986, Notrica served notices of depositions on Torgerson. The notices were defective because they were one day short of the notice period prescribed by law. Sandco's objection to the depositions on that ground were sustained.

At the July 18, 1986, trial setting compliance conference, Notrica's request to extend the discovery cutoff date was denied. Again, on August 15, 1986, the supervising judge denied Notrica's application to extend the discovery cutoff date. On September 10, 1986, the supervising judge denied Notrica's motion for a continuance based on the lack of discovery.

On September 30, 1986, Notrica informed the supervising judge "the situation has gotten worse," after indicating another motion for continuance would be made and hearing the judge's remark: "Your motion has been denied previously. I'm sure the same motion will be denied again, but you can make it, Mr. Pines."

The case was assigned to a trial court on October 2, 1986. After Notrica told the trial judge he wanted to make a continuance motion, the trial judge

sent the case back to the supervising judge. The supervising judge announced he was not going to continue the case. Notrica stated as a basis for needing discovery and an expert that its investigation since the denial of its continuance motion included "the plaintiff indicating himself to my client that they have now revised their demand for damages and have indicated that they're going to seek four and a half million dollars in damages instead of the $600,000 they indicated in answers to interrogatories, and apparently blame the failure of this entire project upon the—the—my client's alleged failure to produce plans." Notrica further argued, among other things, the request was based partly upon "the plaintiff's new assertions . . . between the time of the last motion to continue, I've found out that if anything, the matter has gotten worse. [¶] I am not prepared to go to trial."

Sandco made the following argument: "Mr. Torgerson: Your Honor, I believe jurisdictionally the court should not hear and should really deny the motion against section 1008, no new information having been presented cognizant [*sic*] the motion, because Mr. Pines' representation of his belated investigation does not explain his lack of action during the preceding two and a half years.

"This matter was continued and delayed and delayed and delayed because of Mr. Pines' desire to stay out of this courthouse. He's now going to follow through with that program and strategy by filing an affidavit. I don't believe the court should be a party to that strategy. Good cause is lacking. 1008 precludes granting of the motion."

The trial court denied Notrica's motion to continue. After a short recess taken to discuss the possibility of making a section 170.6 challenge to the trial judge, the hearing before the supervising judge resumed, Sandco waived a jury trial and Notrica announced it would not file the challenge. The case was sent back to the trial court.

Sandco filed a preliminary trial brief which described the breach of contract causes of action and the evidence to be adduced at trial, in part, as follows:

"(1) *Breach of Written Contract,* i.e., breach of Notrica's and Campo de Leon's promises to deliver upon close of escrow on the sale of the San Marcos land to Sandco all engineering plans, specifications and maps, known by Notrica to be essential to Sandco's development plans and budget under its $13,500,000 loan from Vernon Savings & Loan, and to indemnify Sandco against any liens of L&S Consultants.

" .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(4) *Breach of Oral Contract,* in that Notrica and Campo de Leon orally promised to deliver *immediately,* upon close of escrow, the necessary engineering plans and approved maps.

"..................

". . . The L&S engineering work, including surveying notes, hydrology and hydraulic studies, original topographic maps, grading plans, street improvement plans, utility plans, all tentative and final maps, and engineering plans for tentative and final maps, was a major component of the value of the land because it facilitated development. Sandco (Messrs. Newman and Grecian) learned of the property through Sheldon Coler, as evidenced by Notrica's written Agreement to pay Coler a $40,000.00 finder's fee. Coler obtained from Notrica and delivered to Sandco certain copies of the L&S engineering work. Notrica has repudiated and breached his agreement with Coler, and Coler has commenced a lawsuit against Notrica. Notrica paid Grubb & Ellis no commission on the transaction, even though on or about November 20, 1983 Notrica presented Sandco with said broker's set-up at Sandco's offices.

"The evidence will establish that Notrica represented and promised, from November 1983 through March 9, 1984, that the land was being sold to Sandco with all engineering work, plans and specifications of L&S Consultants, and Sandco designated L&S Consultants as its civil engineer in loan documentation . . . ."

At trial, Sandco's first witness, Stanley D. Grecian, who was director and executive vice-president of Sandco, admitted on cross-examination that Sandco had received complete sets of copies of L&S Engineering's plans and drawings for the Santalina Hills project before the escrow closed. Sandco, however, did not obtain the originals. Sandco's case then changed to theories it was wrongfully deprived of some of L&S's back-up work or of the opportunity to hire L&S itself to do the engineering work on the project for Sandco.

After the two-month trial, the court filed its statement of decision and entered the judgment for Sandco.

In granting Notrica's motion for a new trial, the court applied a theory that in light of section 575.2's proscription against imposing penalties for violations of local rules upon parties and the denial of the later discovery cutoff date conferred by law,[5] there was an irregularity in the proceedings depriving Notrica of a fair trial when the trial court denied Notrica's

---

[5] Former rule 333 of the California Rules of Court granted a right to complete discovery until 30 days before the date set for trial. Here, application of rule 333 would have given the parties time to complete discovery until 30 days before the September 30, 1986, date set for trial, approximately 2 months more than the court order provided.

All rule references are to the California Rules of Court.

motions to extend the July 2, 1986, discovery cutoff date imposed under superior court rules or to continue the case in order to complete discovery.

## DISCUSSION

■   In reviewing the order granting a new trial, we apply the following rule: "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside. [Citations.]" (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].)

Renowned California legal scholar, B. E. Witkin, describes the rule and its reason as follows: "The trial judge is familiar with the evidence, witnesses and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial. Where error or some other ground is established, his discretion in granting a new trial is seldom reversed. The presumptions on appeal are in favor of the order, and the appellate court does not independently redetermine the question whether an error was prejudicial, or some other ground was compelling. Review is limited to the inquiry whether there was any support for the trial judge's ruling, and the order will be reversed only on a strong affirmative showing of abuse of discretion. [Citations.]" (8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 135, p. 538.)

Again, Witkin states: "If the trial judge deems the error prejudicial and grants a new trial, the reviewing court will normally uphold the order, on the theory that the judge is better able to determine the prejudicial effect of error committed during the trial. In other words, the burden of showing prejudice is no longer on the party against whom the error was committed. [Citations.]

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The extraordinary deference to the trial judge's determination is usually shown in appeals from orders *granting a new trial.*" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 328, p. 337, § 329, p. 338.)

Section 657, subdivision 1, authorizes the trial court to grant a new trial "for any of the following causes, materially affecting the substantial rights of such party:

"1. *Irregularity in the proceedings of the court*, jury or adverse party, or any order of the court or abuse of discretion *by which either party was prevented from having a fair trial;*

". . . . . . . . . . . . . . . . . . . . . .

"On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except . . . ." (Italics added.)

While Sandco sets forth six points of argument for reversal of the order granting a new trial,[6] the text of its argument does not correlate with the points and instead raises only two or three points worthy of serious discussion. The primary issues are (1) whether, under the law then in effect,[7] an order or orders having the effect of cutting off discovery at a time earlier than the time allowed by law to conduct discovery can be an "irregularity in the proceedings of the court" within the meaning of section 657, subdivision 1, and (2) whether a new trial order by a trial judge under section 657 may be based on orders made by a different judge. We answer these questions in the affirmative.

---

[6] Under the heading "Statement of the Issues," Sandco sets forth the following points:

"A. Did the trial judge commit reversible error in determining that the pre-trial discovery orders were invalid in the context of a motion for new trial under C.C.P. § 657?

"B. Did the trial judge commit reversible error in granting a new trial in contravention of Cal. Const., Art. VII, [*sic*] § 13, because the pre-trial orders denying discovery up to 30 days before trial did not cause a miscarriage of justice, i.e., no different result was shown to be likely?

"C. Did the trial judge commit reversible error in determining that Notrica was denied a fair trial by reason of 'impropriety in the proceedings' simply because of the denial of motions to conduct discovery after the discovery cutoff established in the trial setting conference order?

"D. Did the trial judge commit reversible error in reviewing the pre-trial orders of other judges which deny discovery or continuance because of Notrica's lack of diligence during the preceding two years?

"E. Did the trial judge commit reversible error in granting a new trial where (1) Notrica failed, during the eight months prior to trial, to seek an extraordinary writ to permit discovery or continue the trial and (2) Notrica failed to seek discovery or a continuance *during* trial?

"F. Did the trial judge commit reversible error in granting a new trial under C.C.P. § 657 because discovery orders may only be reviewed on appeal from a final judgment?"

[7] The "fast track" rules which specifically authorize the shortening of any time specified by statute for performing an act (Gov. Code, § 68612) did not become effective until January 1, 1987, after the trial in this case. (See Stats. 1986, ch. 1335, § 1.)

I*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

II

■   With respect to the propriety of basing a new trial order on error the trial judge finds in the order or orders of another judge of the same court, the general rule is: " 'A superior court is but one tribunal, even if it be composed of numerous departments. . . . An order made in one department during the progress of a cause can neither be ignored nor overlooked in another department . . . .' " (*People* v. *Grace,* 77 Cal.App. 752, 759 [247 P. 585] cited in *Lee* v. *Offenberg,* 275 Cal.App.2d 575, 583 [80 Cal.Rptr. 136].)

"This is because the state Constitution, article VI, section 4 vests jurisdiction in the *court,* '. . . and not in any particular judge or department . . .; and . . . whether sitting separately or together, the judges hold but one and the same court. [Citation.] It follows, . . . where a proceeding has been . . . assigned for hearing and determination to one department of the superior court by the presiding judge . . . and the proceeding . . . has not been finally disposed of . . . it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned . . . . If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion. [Citation.]' (*Williams* v. *Superior Court,* 14 Cal.2d 656, 662 [96 P.2d 334].)" (*In re Kowalski* (1971) 21 Cal.App.3d 67, 70 [98 Cal.Rptr. 444].)

Thus, one department of the superior court cannot enjoin, restrain, or otherwise interfere with the judicial act of another department of the superior court. (*Ford* v. *Superior Court* (1986) 188 Cal.App.3d 737, 742 [233 Cal.Rptr. 607].)

■   Section 657, subdivision 1, authorizes the trial judge to grant a new trial based on a finding of irregularity in the proceedings of "the court." When a trial judge acting under this statutory authority considers orders of another judge as proceedings of the court, there is no inconsistency with the general rule that jurisdiction is in the court and that the judges hold but one and the same court. If those proceedings conducted by another judge are

* See footnote 1, *ante,* page 1495.

determined by the trial judge to be irregularities which prevented a party from having a fair trial, section 657, subdivision 1, authorizes the trial judge to grant a new trial order. Moreover, it is apparent that such a new trial order does not operate to "enjoin, restrain, or otherwise interfere with the judicial act of another department of the superior court." (*Ford, supra,* 188 Cal.App.3d at p. 742.) Here, for example, the orders of the other judge remained in full force and effect throughout the proceedings in the superior court. Those orders were not changed by the order granting a new trial.

We conclude there is no legal impediment, jurisdictional or otherwise, to a trial judge granting a new trial under section 657, subdivision 1, based on proceedings of the court consisting of an order or orders of another judge of the court which the trial judge determines was an irregularity preventing a party from having a fair trial.

### III*

. . . . . . . . . . . . . . . . . . . .

### DISPOSITION

We conclude there was a reasonable basis for the trial court's order granting a new trial under section 657, subdivision 1. Thus, under the test of the *Jiminez* case, *supra,* 4 Cal.3d 379, 387, the order will not be set aside.

The order granting a new trial is affirmed. The cross-appeal from the judgment is dismissed. Notrica is awarded its costs on appeal.

Kremer, P. J., and Huffman, J., concurred.

---

*See footnote 1, *ante,* page 1495.